609 A.2d 1280
STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ANTHONY PRECIOSE, DEFENDANT–APPELLANT.

Argued May 5, 1992—Decided August 3, 1992.

452

*Claudia Van Wyk,* Deputy Public Defender II, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, *Ms. Van Wyk* and *Pamela Lynn Brause,* Designated Counsel, of counsel and on the briefs).

*Mark P. Stalford,* Assistant Prosecutor, argued the cause for respondent (*John Kaye,* Monmouth County Prosecutor, attorney).

*Karen Fiorelli,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney).

The opinion of the Court was delivered by

STEIN, J.

Defendant filed a petition for post-conviction relief based largely on a claim of ineffective assistance of counsel. Upholding the denial of relief, the Appellate Division expressly relied on *Rule* 3:22-4, which bars petitioners from raising claims that could have been brought on direct appeal. The court also invoked the United States Supreme Court's decision in *Harris v. Reed,* 489 *U.S.* 255, 109 *S.Ct.* 1038, 103 *L.Ed.*2d 308 (1989), which limits federal habeas review when state courts explicitly

set forth state procedural grounds for denying petitioners' claims. The Appellate Division erred in denying defendant's petition on procedural grounds. We hold that defendant's claim was cognizable on post-conviction review and we therefore remand the matter to the trial court for an evidentiary hearing. Moreover, we caution our reviewing courts against denying post-conviction petitions on procedural grounds in order to limit a defendant's right to seek relief through federal habeas corpus. Our compelling judicial interest in sustaining only those convictions free from constitutional error is disserved by decisions of our courts or, for that matter, federal courts that limit the availability of federal habeas review in cases in which such review may be warranted.

I

According to the State, twenty-two-year-old Anthony Preciose broke into a private residence, robbing four occupants at knifepoint and sexually assaulting one of them. Although the assailant wore a mask, one victim identified defendant based on his voice. A grand jury indicted defendant on twenty-three counts: theft, *N.J.S.A.* 2C:20–3 (count 1); receiving stolen property, *N.J.S.A.* 2C:20–7a (count 2); burglary, *N.J.S.A.* 2C:18–2 (count 3); unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(d) (count 4); possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(d) (count 5); criminal restraint, *N.J.S.A.* 2C:13–2(a) (counts 6, 7, 8 and 9); terroristic threats, *N.J.S.A.* 2C:12–3 (counts 10, 11 and 12); armed robbery, *N.J.S.A.* 2C:15–1(a) (counts 13, 14 and 15); attempted armed robbery, *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:15–1(a) (count 16); aggravated assault, *N.J.S.A.* 2C:12–1(b)(1) (counts 17, 18 and 19); aggravated assault with a deadly weapon, *N.J.S.A.* 2C:12–1(b)(2) (count 20); aggravated sexual assault, *N.J.S.A.* 2C:14–2(a)(3) and *N.J.S.A.* 2C:14–2(a)(4) (counts 21 and 22); and aggravated criminal sexual contact, *N.J.S.A.* 2C:14–3 (count 23).

Under a plea agreement, defendant entered a *retraxit* guilty plea to burglary, armed robbery, and attempted armed robbery, and promised to testify for the State in a separate criminal matter. In exchange, the State recommended that defendant receive a forty-year maximum term with a seventeen-and-a-half-year parole-ineligibility period. At the April 16, 1983, plea hearing, the court established the factual basis for the plea through a series of questions:

Q. Did you enter the residence of the home of [ ] with the purpose of committing and [sic] offense?

A. Yes.

Q. What offense did you intend to commit?

A. Burglary, armed robbery.

\* \* \* \* \* \* \* \*

Q. And what was the instrument, sir, that you had with you on that day in Monmouth Hills?

A. A knife.

Asked whether he had committed armed robbery against four occupants of the house, defendant responded affirmatively. Defendant later offered an apology at his June 3, 1983, sentencing hearing:

I'd like to first off say, I'm sorry, [I] caused a lot of people a lot of troubles and I know I should be punished for what I did. There is no, nothing justifiable about it at all. I have some problems. I need help to deal with them and I feel I can be rehabilitated.

The court sentenced defendant in accordance with the plea agreement to an aggregate term of forty years with a seventeen-and-a-half-year parole-ineligibility period.

Defendant maintains his innocence, claiming that his attorney pressured him into pleading guilty. Although defendant admits planning the robbery, he contends that his associate actually executed the crime because defendant was too intoxicated at the time. The presentence report noted that

[defendant] steadfastly denied the actual commission of the present offense.

\* \* \* \* \* \* \* \*

When questioned as to why he pled guilty to the present offense, [defendant] stated it "was a matter of pressure[ ]." He did not implicate [his friend] at the time of his arrest as he did not feel there was sufficient evidence to convict him and the defendant felt that if he couldn't be convicted, [his friend] would also not be convicted.

Defendant also claims that his counsel advised him to offer the apology at his sentencing hearing.

Defendant's trial counsel filed a cursory appeal arguing that the trial court had abused its discretion by sentencing defendant to an excessive parole-ineligibility period. On March 22, 1984, the Appellate Division affirmed defendant's sentence. Defendant wrote a letter, dated March 23, 1984, requesting the Office of the Clerk to disregard any appeal briefs filed on his behalf by his counsel. In that letter, defendant alleged that trial counsel was "negligent and incompetent" and that he had authorized counsel only to file a notice of appeal. Defendant then filed a *pro se* petition for certification, which this Court denied. 103 *N.J.* 449, 511 *A.*2d 636 (1986). On June 2, 1988, defendant filed a petition for post-conviction relief.

Defendant argues that he pled guilty as a result of ineffective assistance of counsel. Defendant had retained private counsel for trial (trial counsel). Defendant first asserts that his attorney was not ready for trial. Indeed, the trial court had granted counsel's motion for an adjournment but had ordered him to reimburse the County for having incurred witness travel expenses on the day originally scheduled for trial. In an affidavit accompanying his appeal of the denial of his petition for post-conviction relief, defendant sets forth detailed allegations of ineffective assistance of counsel:

4. On or about March 23, 1988, [trial counsel] visited me in jail and spoke with me for approximately twenty minutes regarding my case. This was the only time we discussed my case outside of the courtroom.

\* \* \* \* \* \* \* \*

6. On April 6, 1983, [ ] a substitute attorney who was completely unknown to me, appeared on my behalf in court.

7. [The substitute attorney] informed me that [trial counsel] was away on vacation. In addition, [he] told me he had just received my case that day and no witnesses had been subpoenaed on my behalf.

8. At this time, I requested an adjournment and was told by [the substitute attorney] that due to the [prior adjournment], no more continuances were available.

9. After relating the facts of my case maintaining my innocence to [the substitute attorney], I was told I would most certainly be found guilty, especially since there were no witnesses to call in my defense.

10. I was then informed by [the substitute attorney] that I faced nearly 290 years in prison.

11. On that same day, [the substitute attorney] negotiated a plea agreement which stipulated a 40 year sentence with a 20 year parole ineligibility for five charges. I was told by [him] the five charges normally carried a 90 year sentence with a 45 year parole ineligibility. In light of the circumstances, I pled guilty to these five charges.

\* \* \* \* \* \* \* \*

13. Throughout the time period between my plea and sentencing, [trial counsel] never contacted me.

14. On June 3, 1983, the day of sentencing, I asked [trial counsel] if I could withdraw my plea. I was informed that there was nothing I could do about it now and could not take my plea back. He then reassured me that I would not receive the sentence stipulated on the plea agreement.

\* \* \* \* \* \* \* \*

16. After sentencing, it was my wish to have the Public Defender's Office appeal my case. I never retained [trial counsel] to appeal my case and in fact, had requested he turn my case over to the Public Defender's Office.

17. On March 12, 1984, I received a copy of a brief [trial counsel] had filed on my behalf. In an attempt to stop the brief, I filed a motion to quash the brief which failed.

Although defendant should have moved before the Appellate Division for leave to expand the record to include this affidavit, its obvious relevance leads us to conclude that we should make it a part of the appellate record. *R.*2:10–5. In that connection, we also note that the petition for post-conviction relief included less detailed but similar allegations of ineffective assistance of counsel. Moreover, at the hearing for post-conviction relief, defendant's new counsel (defense counsel), appointed by the Public Defender's office, argued that defendant had been denied effective assistance of trial and appellate counsel and requested an evidentiary hearing. Defense counsel adduced further arguments in support of defendant's claim. First, he asserted that trial counsel had failed to challenge the identification of defendant as the actual perpetrator of the crime:

The first identification that was made was made in a show-up context and by that, I mean, within approximately an hour of the crimes, police officers took Mr. Preciose into custody in Highlands and brought him back to the scene of the crime \* \* \* where he was displayed to the victims of the offense who made equivocal identifications and one made a positive identification when his appearance was coupled with a voice exemplar in effect at the scene of the crime.

[Trial] counsel made no motion to challenge that identification procedure, none at all. * * * I note that the State, without there being a motion from [trial] counsel, filed its own motion arguing that the identification should be admissible at trial, and that was never ruled on, because the trial court never had to rule on it since motions were never argued in the case.

Secondly, he noted that trial counsel had never opposed the State's amendment of one count from attempted to actual armed robbery. Finally, he pointed out that trial counsel had never challenged the admissibility of defendant's Florida conviction for temporary unauthorized use of a motor vehicle. Asked how defendant's protestations of innocence could be squared with his apology to the sentencing court, defense counsel responded that trial counsel had advised defendant to apologize and request rehabilitation. The court ruled that defendant had failed to prove ineffective assistance of counsel, and thus denied defendant's request for an evidentiary hearing.

Defendant appealed the denial of post-conviction relief to the Appellate Division, raising the ineffective assistance of trial counsel as his major claim. The Appellate Division affirmed the denial of post-conviction relief in an unreported opinion. The court first ruled that the trial court properly exercised its discretion in denying an evidentiary hearing on the post-conviction relief motion. Second, the court held that *Rule* 3:22–4 barred defendant's claim of ineffective assistance of counsel because defendant had failed to raise that issue on direct appeal. As noted, *infra* at 464–465, 609 *A.*2d at 1287, the court specifically referred to *Harris v. Reed* in emphasizing that it had based its denial of post-conviction relief on procedural grounds. The court then proceeded to discuss the substantive merits of defendant's claim, concluding, however, that defendant's apology at sentencing and the benefits of the plea bargain weighed against finding ineffective assistance of counsel.

We granted defendant's petition for certification limited to the issue of the Appellate Division's application of *Rule* 3:22–4. 127 *N.J.* 552, 606 *A.*2d 365 (1991).

## II

 Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus. *See* S. Pressler, *Current N.J. Court Rules*, Rules 3:22–1 to –22 (1992). *Rule* 3:22–2 provides four grounds for post-conviction relief: (a) "substantial denial in the conviction proceedings" of a defendant's state or federal constitutional rights; (b) a sentencing court's lack of jurisdiction; (c) an unlawful sentence; and (d) any habeas corpus, common-law, or statutory grounds for a collateral attack. A petitioner must establish the right to such relief by a preponderance of the credible evidence. *State v. Mitchell*, 126 *N.J.* 565, 579, 601 *A.*2d 198 (1992) (citing *State v. Marshall*, 244 *N.J.Super.* 60, 69, 581 *A.*2d 538 (Law.Div.1990)); *State v. Zold*, 105 *N.J.Super.* 194, 203, 251 *A.*2d 475 (Law Div.1969), *aff'd o.b.*, 110 *N.J.Super.* 33, 264 *A.*2d 257 (App.Div.1970), *certif. denied*, 57 *N.J.* 131, 270 *A.*2d 34 (1970). Post-conviction relief is neither a substitute for direct appeal, *R.* 3:22–3, nor an opportunity to relitigate cases already decided on the merits, *R.* 3:22–5. *See State v. Cerbo*, 78 *N.J.* 595, 605, 397 *A.*2d 671 (1979); *State v. Smith*, 43 *N.J.* 67, 74, 202 *A.*2d 669 (1964), *cert. denied*, 379 *U.S.* 1005, 85 *S.Ct.* 731, 13 *L.Ed.*2d 706 (1965); *State v. Cacamis*, 230 *N.J.Super.* 1, 5, 552 *A.*2d 616 (App.Div.1988), *certif. denied*, 114 *N.J.* 496, 555 *A.*2d 617 (1989); *State v. Boyd*, 165 *N.J.Super.* 304, 311, 398 *A.*2d 129 (App.Div.1979), *certif. denied*, 85 *N.J.* 128, 425 *A.*2d 285 (1980). Consequently, petitioners may be procedurally barred from post-conviction relief under *Rule* 3:22–4 if they could have, but did not, raise the claim in a prior proceeding, unless they satisfy one of the following exceptions:

(a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.

## A.

Under New Jersey case law, petitioners are rarely barred from raising ineffective-assistance-of-counsel claims on post-

conviction review. Such claims may fall within *Rule* 3:22-4(c), which affords post-conviction review for constitutional claims that could have been raised earlier, because those claims are grounded in the Sixth Amendment and the New Jersey Constitution. *See State v. Sparano,* 249 *N.J.Super.* 411, 419, 592 *A.2d* 608 (App.Div.1991); *State v. Sloan,* 226 *N.J.Super.* 605, 612, 545 *A.2d* 230 (App.Div.), *certif. denied,* 113 *N.J.* 647, 552 *A.2d* 171 (1988).

Ineffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding. *See R.* 3:22-4(a); *Mitchell, supra,* 126 *N.J.* at 585, 601 *A.2d* 198. As the United States Supreme Court observed:

> Because collateral review will frequently be the only means through which an accused can effectuate the right to counsel, restricting the litigation of some Sixth Amendment claims to trial and direct review would seriously interfere with an accused's right to effective representation. A layman will ordinarily be unable to recognize counsel's errors and to evaluate counsel's professional performance; consequently, a criminal defendant will rarely know that he has not been represented competently until after trial or appeal, usually when he consults another lawyer about his case. Indeed, an accused will often not realize that he has a meritorious ineffectiveness claim until he begins collateral review proceedings, particularly if he retained trial counsel on direct appeal. [*Kimmelman v. Morrison,* 477 *U.S.* 365, 378, 106 *S.Ct.* 2574, 2584, 91 *L.Ed.2d* 305, 321 (1986) (citations omitted).]

Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record. *See State v. Dixon,* 125 *N.J.* 223, 262, 593 *A.2d* 266 (1991); *State v. Walker,* 80 *N.J.* 187, 194, 403 *A.2d* 1 (1979); *Sparano, supra,* 249 *N.J.Super.* at 419, 592 *A.2d* 608; *Sloan, supra,* 226 *N.J.Super.* at 612, 545 *A.2d* 230; *but see Zold, supra,* 105 *N.J.Super.* at 197–98, 251 *A.2d* 475 (holding that ineffective-assistance-of-counsel claim should have been raised on direct appeal when defendant discovered attorney's conflict of interest before sentencing). Other courts have expressed the same rationale for encouraging defendants to raise ineffective assistance of counsel claims in post-conviction proceedings. *See, e.g., United States v. Gambino,* 788 *F.*2d 938, 950 (3d Cir.),

*cert. denied,* 479 *U.S.* 825, 107 *S.Ct.* 98, 93 *L.Ed.*2d 49 (1986); *United States v. Birges,* 723 *F.*2d 666, 670 (9th Cir.), *cert. denied,* 466 *U.S.* 943, 104 *S.Ct.* 1926, 80 *L.Ed.*2d 472, and 469 *U.S.* 863, 105 *S.Ct.* 200, 83 *L.Ed.*2d 131 (1984); *People v. Pope,* 23 *Cal.*3d 412, 152 *Cal.Rptr.* 732, 590 *P.*2d 859, 867 (1979).

■ In this case, the Appellate Division held that *Rule* 3:22–4 barred the ineffective-assistance-of-counsel claim, flatly asserting that defendant could have raised that claim on direct appeal. However, we find defendant's failure to have raised that claim earlier to be entirely justifiable. Defendant was twenty-two years old and possessed a tenth grade education at the time of his trial. In addition, the details of trial counsel's alleged failings lay outside the trial record and could not be presented on direct appeal. Moreover, defendant's trial counsel filed the direct appeal, challenging only the alleged excessiveness of defendant's sentence. Defendant first presented detailed allegations of ineffective assistance of counsel in his motion for post-conviction review. At oral argument before this Court, the State conceded that the Appellate Division had incorrectly barred defendant's ineffective-assistance-of-counsel claim on procedural grounds. Accordingly, we hold that it was error to dismiss defendant's post-conviction relief application on procedural grounds.

### B.

■ The State nevertheless asserts that we should affirm the Appellate Division's denial of post-conviction relief on substantive, rather than procedural, grounds. After making its procedural ruling, the court also discussed and dismissed defendant's ineffective-assistance-of-counsel claim on the merits. Rather than treating that discussion of the merits as dicta, we consider it an alternative holding. *See U.S. ex rel. Caruso v. Zelinsky,* 689 *F.*2d 435, 439–40 (3d Cir.1982) (holding that New Jersey court's decision based both on merits and procedural bar of *Rule* 3:22–4 created alternative holdings, each with equal force). *But cf. Mitchell, supra,* 126 *N.J.* 565, 601 *A.*2d 198

(denying post-conviction review on procedural grounds but thoroughly discussing merits of claim). However, we cannot address the merits of defendant's claim without ascertaining the sufficiency of the factual record before us.

Defendant contends that the trial court erred by denying him an evidentiary hearing on his ineffective-assistance-of-counsel claim. Although *Rule* 3:22–1 does not require evidentiary hearings to be held on post-conviction relief petitions, *Rule* 3:22–10 recognizes judicial discretion to conduct such hearings. *See State v. Odom*, 113 *N.J.Super.* 186, 273 *A.*2d 379 (App.Div.1971) (holding that post-conviction relief petition asserting vague denial of due process was insufficient to warrant an evidentiary hearing). In *State v. Flores*, 228 *N.J.Super.* 586, 589–90, 550 *A.*2d 752 (1988), *certif. denied*, 115 *N.J.* 78, 556 *A.*2d 1220 (1989), the Appellate Division upheld the trial court's denial of an evidentiary hearing where the post-conviction relief petition alleged excessive sentencing. However, the court "emphasize[d] that resolution of the issues raised by defendant did not require the taking of oral testimony." *Id.* at 590, 550 *A.*2d 752. By contrast, a defendant's claim of ineffective assistance of trial and appellate counsel is more likely to require an evidentiary hearing because the facts often lie outside the trial record and because the attorney's testimony may be required. As one court noted:

> Generally, a claim of ineffective assistance of counsel cannot be raised on direct appeal. Rather, defendant must develop a record at a hearing at which counsel can explain the reasons for his conduct and inaction and at which the trial judge can rule upon the claims including the issue of prejudice. [*Sparano, supra,* 249 *N.J.Super.* at 419, 592 *A.*2d 608.]

*See State v. Koch*, 118 *N.J.Super.* 421, 426, 288 *A.*2d 295 (App.Div.1972) (remanding for evidentiary hearing in post-conviction proceedings on issues of presence of counsel and waiver). Thus, trial courts ordinarily should grant evidentiary hearings to resolve ineffective-assistance-of-counsel claims if a defendant has presented a *prima facie* claim in support of post-conviction relief. As in a summary judgment motion, courts

should view the facts in the light most favorable to a defendant to determine whether a defendant has established a *prima facie* claim.

To establish a *prima facie* claim of ineffective assistance of counsel, a defendant must demonstrate the reasonable likelihood of succeeding under the test set forth in *Strickland v. Washington*, 466 *U.S.* 668, 694, 104 *S.Ct.* 2052, 2068, 80 *L.Ed.*2d 674, 698 (1984), and *United States v. Cronic*, 466 *U.S.* 648, 104 *S.Ct.* 2039, 80 *L.Ed.*2d 657 (1984), which we adopted in *State v. Fritz*, 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987). Under the *Strickland–Cronic–Fritz* standard, the first issue is whether counsel's performance was deficient. Defendant points to several aspects of counsels' performance as deficient: (1) trial counsel met with defendant on a single occasion for twenty minutes; (2) trial counsel failed to challenge the admissibility of the State's identification procedure; (3) trial counsel sent a substitute attorney to represent defendant on the day of trial, and consequently was absent from the negotiations surrounding the plea bargain; (4) both attorneys failed to subpoena witnesses and failed to investigate an alleged alibi witness, see *State v. Deutsch*, 229 *N.J.Super.* 374, 377, 551 *A.*2d 991 (App. Div.1988); (5) the substitute attorney informed defendant that he could receive a maximum sentence of 290 years and advised defendant to plead guilty; and (6) trial counsel advised defendant at the sentencing hearing that defendant could not withdraw his guilty plea. By and large, courts have rejected Sixth Amendment claims based on a trial counsel's inadequate preparation. *See Fritz, supra*, 105 *N.J.* at 61 n. 3, 519 *A.*2d 336 (citing cases). Nevertheless, defendant might have demonstrated at an evidentiary hearing that the cumulative effect of trial and substituted counsels' allegedly casual and superficial representation of defendant's interests constituted deficient performance.

The second, and far more difficult, prong of the *Strickland–Cronic–Fritz* test is whether there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland, supra*, 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698. Defendant asserts that the patently-inadequate preparation of both attorneys and the substitute attorney's incorrect advice regarding his possible sentence, combined with the last-minute substitution of attorneys, pressured him into pleading guilty. We find that contention plausible and less speculative than other types of counsel errors. *See, e.g., State v. Hightower*, 120 *N.J.* 378, 407–08, 410–12, 577 *A.*2d 99 (1990) (finding defendant was not prejudiced by counsel's allegedly-deficient opening and closing arguments and by his failure to object to prosecutor's prejudicial comment to jury); *Fritz, supra*, 105 *N.J.* at 64–65, 519 *A.*2d 336 (rejecting defendant's claim of prejudice based on absent witnesses as too speculative); *Sloan, supra*, 226 *N.J.Super.* at 616, 545 *A.*2d 230 (concluding that defendant did not establish prejudice based on counsel's failure to pre-test defendant on polygraph test).

Based on the facts set forth in defendant's papers, we conclude that he has established a *prima facie* case of ineffective assistance of counsel. Thus, we remand to the trial court for an evidentiary hearing and a determination of the merits of defendant's claim.

### III

The Appellate Division's decision invites us to examine the interplay between our state courts' procedural rulings and federal habeas review. Invoking *Rule* 3:22–4 to bar defendant's ineffective-assistance-of-counsel claim, the Appellate Division stated:

> Here, defendant had the opportunity to raise this issue, but failed to do so and is now procedurally barred from raising the claim. *R.* 3:22–4. We specifically rely on this procedural bar. *See Harris v. Reed,* 489 *U.S.* 255, 264, 109 *S.Ct.* 1038, 1044, 103 *L.Ed.*2d 308, 318 (1989) (holding that the adequate and independent state ground doctrine prohibits consideration of federal claims on either direct or habeas review if state court's decision clearly and expressly states that its judgment rests on a state procedural bar).

By using that language, the court sought to preclude federal habeas review of defendant's claim under the United States Supreme Court's procedural default doctrine. *See Ratcliff v. Estelle,* 597 *F.*2d 474, 477–78 (5th Cir.) (upholding denial of habeas review on state procedural default where state court discussed merits of constitutional challenge after ruling that there was procedural default), *cert. denied,* 444 *U.S.* 868, 100 *S.Ct.* 143, 62 *L.Ed.*2d 93 (1979). In order to address the Appellate Division's application of that doctrine, and the proper relationship between state post-conviction review and federal habeas review, we first examine recent developments in the Supreme Court's habeas jurisprudence concerning state procedural forfeitures.

■ The writ of habeas corpus is a civil action that provides a remedy for illegal confinement through collateral review of criminal judgments. Habeas corpus is an "extraordinary remedy" because it departs from traditional rules of finality and federalism. *Hensley v. Municipal Court,* 411 *U.S.* 345, 351, 93 *S.Ct.* 1571, 1575, 36 *L.Ed.*2d 294, 300 (1973); *see Lehman v. Lycoming County Children's Servs.,* 648 *F.*2d 135, 138–39 (3d Cir.1981), *aff'd,* 458 *U.S.* 502, 102 *S.Ct.* 3231, 73 *L.Ed.*2d 928 (1982). The so-called "Great Writ," long regarded as a bulwark of individual liberty, has its origins in the English common law and the Magna Charta and is guaranteed by the United States Constitution. *U.S. Const.* art. I, § 9, cl. 2. Although Congress granted the federal courts jurisdiction to issue the writ of habeas corpus for federal prisoners in the Judiciary Act of 1789, it did not authorize habeas jurisdiction over state prisoners until 1876. *Fay v. Noia,* 372 *U.S.* 391, 401 n. 9, 83 *S.Ct.* 822, 828 n. 9, 9 *L.Ed.*2d 837, 846 n. 9 (1963). Under 28 *U.S.C.* § 2254, federal courts are authorized to entertain applications for writs of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Although federal habeas review is governed by statute, the Supreme Court has displayed, in the

words of then-Justice Rehnquist, a "historic willingness to overturn or modify its earlier views of the scope of the writ, even where the statutory language authorizing judicial action has remained unchanged." *Wainwright v. Sykes*, 433 *U.S.* 72, 81, 97 *S.Ct.* 2497, 2503, 53 *L.Ed.*2d 594, 604 (1977). That historical interpretation both justified and presaged the Court's recent decisions curtailing the availability of federal habeas review. *See Murray v. Carrier*, 477 *U.S.* 478, 496, 106 *S.Ct.* 2639, 2649–50, 91 *L.Ed.*2d 397, 414 (1986) (acknowledging that the standard adopted in *Sykes* "may lack a perfect historical pedigree"); James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 2.2, at 6–12 (1988) (discussing historical constancy of writ of habeas corpus). *Compare Fay, supra,* 372 *U.S.* at 402–26, 83 *S.Ct.* at 829–42, 9 *L.Ed.*2d at 846–61 *with* Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 *Harv.L.Rev.* 441, 463–99 (1963) *and* Dallin H. Oaks, *Legal History in the High Court—Habeas Corpus,* 64 *Mich.L.Rev.* 451, 458–468 (1966), for differing historical interpretations of the development of habeas corpus.

In 1963, the Supreme Court made habeas review broadly available to State prisoners except when a petitioner "deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." *Fay, supra,* 372 *U.S.* at 438, 83 *S.Ct.* at 848, 9 *L.Ed.*2d at 869. Fourteen years later in *Sykes,* the Supreme Court adopted a standard that was far more deferential to State procedural forfeitures. 433 *U.S.* at 87, 97 *S.Ct.* at 2506–07, 53 *L.Ed.*2d at 608; *see Francis v. Henderson,* 425 *U.S.* 536, 541–42, 96 *S.Ct.* 1708, 1711–12, 48 *L.Ed.*2d 149, 154 (1976). Since *Sykes,* the Supreme Court has narrowed the distinction between direct review and habeas review, and imposed new procedural obstacles to habeas review. *See* Laurence Tribe, *American Constitutional Law,* § 3–24, at 172–73 (2d ed. 1988); Daniel J. Meltzer, *State Court Forfeitures of Federal Rights,* 99 *Harv.L.Rev.* 1130 (1986); Ronald J. Tabak & J. Mark Lane, *Judicial Activism and Legislative "Reform" of Federal Habeas Corpus: A Critical*

*Analysis of Recent Developments and Current Proposals,* 55 *Albany L.Rev.* 1–55 (1991); *see also Keeney v. Tamayo–Reyes,* 504 *U.S.* ——, 112 *S.Ct.* 1715, 118 *L.Ed.*2d 318 (1992) (applying strict procedural standard for excusing habeas petitioner's failure to develop material fact in state-court proceeding).

In *Sykes,* the Court applied the "adequate and independent state ground" doctrine, a jurisdictional precept governing direct appellate review, to the context of habeas review. 433 *U.S.* at 81–87, 97 *S.Ct.* at 2503–07, 53 *L.Ed.*2d at 604–08; *see Coleman v. Thompson,* 501 *U.S.* ——, ——, 111 *S.Ct.* 2546, 2554, 115 *L.Ed.*2d 640, 656 (1991); *Harris, supra,* 489 *U.S.* at 262–63, 109 *S.Ct.* at 1042–43, 103 *L.Ed.*2d at 316–17. Under that doctrine, federal courts are barred from reviewing federal issues in state court judgments that rest on adequate and independent state grounds. *Fox Film Corp. v. Muller,* 296 *U.S.* 207, 210–11, 56 *S.Ct.* 183, 184, 80 *L.Ed.* 158, 160 (1935); *see Michigan v. Long,* 463 *U.S.* 1032, 1038 n. 4, 103 *S.Ct.* 3469, 3475 n. 4, 77 *L.Ed.*2d 1201, 1212 n. 4 (1983). A state ground is adequate when reversal on the federal ground would not affect the judgment, and it is independent when its resolution is not tied to federal issues in the case. *See* Tribe, *supra,* at 163. That doctrine applies whether the state-law ground is substantive or procedural. *Henry v. Mississippi,* 379 *U.S.* 443, 446–47, 85 *S.Ct.* 564, 566–67, 13 *L.Ed.*2d 408 (1965); *see Johnson v. Mississippi,* 486 *U.S.* 578, 587–88, 108 *S.Ct.* 1981, 1987–88, 100 *L.Ed.*2d 575, 585–86 (1988) (finding state procedural bar not adequate ground to preclude direct review); *Ake v. Oklahoma,* 470 *U.S.* 68, 74–75, 105 *S.Ct.* 1087, 1091–92, 84 *L.Ed.*2d 53, 60–61 (1985) (finding state procedural bar not independent so as to preclude direct review); *see also* Meltzer, *supra,* 99 *Harv.L.Rev.* at 1137–45 (discussing criteria for finding a state procedural ground adequate). To determine whether a state court rested its judgment on adequate and independent state grounds, the Court set forth the "plain statement" rule: when "a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law," the federal courts will presume that

there is no adequate and independent state ground in the absence of a "plain statement" to the contrary. *Long, supra,* 463 *U.S.* at 1040–41, 103 *S.Ct.* at 3476–77, 77 *L.Ed.*2d at 1214; *see* Tribe, *supra,* at 165–66. The "plain statement" rule applies to procedural as well as substantive state-law grounds. *Caldwell v. Mississippi,* 472 *U.S.* 320, 327, 105 *S.Ct.* 2633, 2638–39, 86 *L.Ed.*2d 231, 238 (1985).

The Court in *Sykes* held that an adequate and independent state procedural ground precludes federal habeas review unless the petitioner shows *both* cause for the procedural default and actual prejudice resulting from it. 433 *U.S.* at 86–87, 97 *S.Ct.* at 2506–07, 53 *L.Ed.*2d at 608. Thus, *Sykes* created a somewhat anomalous system of federal habeas review: a federal court has full power to grant habeas review of federal constitutional claims when a state court adjudicates the merits of those claims; but a federal court is largely precluded from reviewing those claims when a state court refuses to consider them on the ground that they were procedurally defaulted. In *Sykes,* the Court found neither cause nor prejudice in petitioner's failure to comply with Florida's "contemporaneous objection" rule for suppressing his confession. The Court left open the contours of the cause-and-prejudice test, and since then has defined "cause" and "prejudice" on a case-by-case basis. *Ibid; see* Meltzer, *supra,* 99 *Harv.L.Rev.* at 1147–50. The Supreme Court has not made the application of the "cause and prejudice" test dependent on the nature of the constitutional claim at issue, *see Engle v. Isaac,* 456 *U.S.* 107, 129, 102 *S.Ct.* 1558, 1572, 71 *L.Ed.*2d 783, 801 (1982), or on the State's interest in the enforcement of its procedural rule, *see Murray, supra,* 477 *U.S.* at 491, 106 *S.Ct.* at 2647, 91 *L.Ed.*2d at 410.

Nonetheless, as part of the *Sykes* standard, the Court has provided a narrow exception to the cause requirement "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray, supra,* 477 *U.S.* at 496, 106 *S.Ct.* at 2649, 91 *L.Ed.*2d at 413; *see Smith v. Murray,* 477 *U.S.* 527, 537–38, 106 *S.Ct.* 2661, 2667–68, 91 *L.Ed.*2d 434,

446–47 (1986); *Kuhlmann v. Wilson,* 477 *U.S.* 436, 454, 106 *S.Ct.* 2616, 2627, 91 *L.Ed.*2d 364, 381 (1986); *Sykes, supra,* 433 *U.S.* at 90–91, 97 *S.Ct.* at 2508–09, 53 *L.Ed.*2d at 610; *Stone v. Powell,* 428 *U.S.* 465, 491 n. 31, 96 *S.Ct.* 3037, 3051 n. 31, 49 *L.Ed.*2d 1067, 1086 n. 31 (1976); *see also* Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 *U.Chi.L.Rev.* 142 (1970) (advocating that habeas review should be limited to situations when prisoner supplements his constitutional plea with a colorable claim of innocence). That emphasis on factual innocence supplants habeas review's traditional focus on the state prisoner's constitutional rights. *See Moore v. Dempsey,* 261 *U.S.* 86, 87–88, 43 *S.Ct.* 265, 265–66, 67 *L.Ed.* 543, 544 (1923) ("What we have to deal with is not the petitioners' innocence or guilt, but solely the question whether their constitutional rights have been preserved"); *Ex parte Bollman,* 8 *U.S.* (4 Cranch) 75, 101, 2 *L.Ed.* 554, 563 (1807). As Justice Stevens observed, the Court's inquiry into innocence "goes a long way toward eliminating the distinction, in procedural default cases, between the request for habeas relief and the ultimate issue for a trial court—a distinction that has long been central to our understanding of the Great Writ." *Smith, supra,* 477 *U.S.* at 544 n. 7, 106 *S.Ct.* at 2671 n. 7, 91 *L.Ed.*2d at 450 n. 7 (Stevens, J. dissenting); *see Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (Blackmun, J. concurring in judgment).

Because most procedural defaults are the result of attorney error, the Supreme Court has articulated the cause-and-prejudice standard largely in that context. Under *Fay's* deliberate bypass standard, *see supra* at 465, 609 *A.*2d at 1287, a procedural default caused by inadvertent attorney error did not result in the forfeiture of a state prisoner's constitutional rights. *Fay, supra,* 372 *U.S.* at 439, 83 *S.Ct.* at 849, 9 *L.Ed.*2d at 869; *see Sykes, supra,* 433 *U.S.* at 104–05, 97 *S.Ct.* at 2515–16, 53 *L.Ed.*2d at 619 (Brennan, J., dissenting). However, *Sykes* criticized *Fay* for encouraging defense attorneys to "sandbag[ ]" the state courts by not raising federal constitu-

tional claims until habeas review. 433 *U.S.* at 89, 97 *S.Ct.* at 2507–08, 53 *L.Ed.*2d at 609. Subsequently, the Supreme Court held that inadvertent or ignorant attorney error does not constitute "cause" for any resulting procedural default:

So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, [ ] we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. [*Murray, supra,* 477 *U.S.* at 488, 106 *S.Ct.* at 2645, 91 *L.Ed.*2d at 408.]

Moreover, the Court will consider ineffective assistance of counsel as cause for procedural default only if that substantive claim was presented to the state courts. *Id.* at 488–89, 106 *S.Ct.* at 2645–46, 91 *L.Ed.*2d at 409. Recently, the Court refused to entertain the habeas petition of a death-row inmate whose attorney had filed a post-conviction appeal three days late, finding an absence of "cause" because defendants do not have a constitutional right to counsel for state post-conviction proceedings. *Coleman, supra,* 501 *U.S.* at ——, 111 *S.Ct.* at 2565–69, 115 *L.Ed.*2d at 670–74. Described by Justice Blackmun as another "victim[ ] of the 'new habeas,' " *Sawyer, supra,* —— U.S. at ——, 112 S.Ct. at 2529 (Blackmun, J., concurring in judgment), Coleman was subsequently executed.

In *Harris v. Reed,* a case in which petitioner raised an ineffective-assistance-of-trial-counsel claim, the Supreme Court applied the "plain statement" rule to procedural default cases on habeas review. 489 *U.S.* at 261–63, 109 *S.Ct.* at 1042–43, 103 *L.Ed.*2d at 316–17. Although the state appellate court had found that petitioner had forfeited most of his claims by not raising them on direct appeal, it considered and rejected the merits of all his claims. Consequently, the court's judgment was ambiguous on whether it rested on the merits or on state procedural grounds. The Court held:

Faced with a common problem, we adopt a common solution: a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and

expressly' states that its judgment rests on a state procedural bar. [*Id.* at 263, 109 *S.Ct.* at 1043, 103 *L.Ed.*2d at 317 (citations omitted).]

Because the state court had not expressly relied on state procedural law to bar petitioner's claim, the Supreme Court held that petitioner could seek habeas review. *Id.* at 266, 109 *S.Ct.* at 1045, 103 *L.Ed.*2d at 319. Adopting the "plain statement" rule, the Court reasoned that it would be more intrusive for federal courts to "second-guess" whether a state court had relied on a state procedural bar. *Id.* at 264–265, 109 *S.Ct.* at 1044, 103 *L.Ed.*2d at 318. The Court noted that state courts wishing to preclude federal habeas review on state procedural grounds could merely write a "one-line pro forma order * * * that 'relief is denied for reasons of procedural default.' " *Id.* at 265 n. 12, 109 *S.Ct.* at 1044 n. 12, 103 *L.Ed.*2d at 319 n. 12. Thus, *Harris* created a presumption against finding a procedural default absent a state court's express reliance on a state procedural bar.

In two subsequent cases, the Court largely eviscerated the *Harris* presumption by holding that state courts need not employ plain statements to express procedural defaults. In *Coleman, supra,* the Court found a procedural default based on the context of the motions filed on state collateral review despite "some ambiguity" in the state court's three-sentence dismissal order. 501 *U.S.* at ——, 111 *S.Ct.* at 2561–62, 115 *L.Ed.*2d at 665. In a companion case, the Court interpreted the silence of a state court as approving the procedural bar relied on by a lower court: "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 *U.S.* ——, ——, 111 *S.Ct.* 2590, 2594, 115 *L.Ed.*2d 706, 716 (1991). Those two cases ensure that federal habeas review is not available whenever state courts issue ambiguous rulings: rather, the *Harris* presumption "applies only * * * where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." *Coleman, supra,* 501

*U.S.* at ——, 111 *S.Ct.* at 2559, 115 *L.Ed.*2d at 662. Those decisions respond to Justice Kennedy's concern that *Harris* would create "perverse incentives" for prisoners to burden state courts with "a never-ending stream of petitions for post conviction relief" in the hopes of eventually obtaining "a suitably ambiguous rebuff." *Harris, supra,* 489 *U.S.* at 282, 109 *S.Ct.* at 1053, 103 *L.Ed.*2d at 330 (Kennedy, J., dissenting).

The Court has justified its drastic limitations on the availability of habeas review as evincing greater respect for state procedural rules. *Coleman, supra,* 501 *U.S.* at ——, 111 *S.Ct.* at 2563–64, 115 *L.Ed.*2d at 669. As the Court observed:

[T]he Great Writ imposes special costs on our federal system. The States possess primary authority for defining and enforcing the criminal law. * * * Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.

In *Wainwright v. Sykes,* we recognized that these costs are particularly high when a trial default has barred a prisoner from obtaining adjudication of his constitutional claim in the state courts. In that situation, the trial court has had no opportunity to correct the defect and avoid problematic trials. The defendant's counsel, for whatever reasons, has detracted from the trial's significance by neglecting to raise a claim in that forum. The state appellate courts have not had a chance to mend their own fences and avoid federal intrusion. Issuance of a habeas writ, finally, exacts an extra charge by undercutting the State's [sic] ability to enforce its procedural rules. [*Engle, supra,* 456 *U.S.* at 128–29, 102 *S.Ct.* at 1572, 71 *L.Ed.*2d at 800–01 (citations omitted).]

Thus, *Sykes* and its progeny espouse a theory of federalism that subordinates the vindication of federal constitutional rights to a state's enforcement of its procedural rules. Critics contend that that triumph of procedural formalism over substantive justice turns habeas corpus on its head. *See, e.g.,* Larry W. Yackle, *Explaining Habeas Corpus,* 60 *N.Y.U.L.Rev.* 991, 1058 (1985); Curtis R. Reitz, *Federal Habeas Corpus: Impact of an Abortive State Proceeding,* 74 *Harv.L.Rev.* 1315, 1342–52 (1961). For, as Justice Holmes remarked,

habeas corpus cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved, opens the inquiry whether they have been more than an empty shell. [*Frank v. Mangum,* 237

*U.S.* 309, 346, 35 *S.Ct.* 582, 594, 59 *L.Ed.* 969, 988 (1915) (Holmes, J., dissenting).]

Moreover, the cause-and-prejudice standard presumes well-reasoned state procedural defaults that may in fact be the result of hostility towards federal rights or federal right-holders or of outmoded state procedures. Meltzer, *supra,* 99 *Harv.L.Rev.* at 1136. Arguably, the Court has "transform[ed] the duty to protect federal rights into a self-fashioned abdication." *Coleman, supra,* 501 *U.S.* at ——, 111 *S.Ct.* at 2571, 115 *L.Ed.*2d at 677 (Blackmun, J., dissenting).

Some commentators assert that the costs of habeas review are no higher when the state court rests its final decision on procedural rather than substantive grounds. *Murray, supra,* 477 *U.S.* at 520 n. 2, 106 *S.Ct.* at 2680 n. 2, 91 *L.Ed.*2d at 430 n. 2 (Brennan and Marshall, JJ., dissenting). Indeed, the costs of habeas review may be higher as a result of the procedural default doctrine: "[I]n adhering to *Sykes,* federal courts often engage in unnecessarily time-consuming and complex review of purely procedural issues. It would often be far quicker and far fairer for the federal courts simply to decide the constitutional issues being presented." Tabak and Lane, *supra,* 55 *Albany L.Rev.* at 41; *see Engle, supra,* 456 *U.S.* at 136, 102 *S.Ct.* at 1576, 71 *L.Ed.*2d at 806 (Stevens, J., concurring in part, dissenting in part) ("the Court's preoccupation with procedural hurdles is more likely to complicate than to simplify the processing of habeas corpus petitions by federal judges"). Moreover, Justice Blackmun has observed that the cost of any potential habeas relief should be borne by the states because that cost "is incurred as a direct result of the State's failure scrupulously to honor [a defendant's] federal rights." *Coleman, supra,* 501 *U.S.* at ——, 111 *S.Ct.* at 2574, 115 *L.Ed.*2d at 681 (Blackmun, J., dissenting).

The Supreme Court's cause-and-prejudice standard has encouraged some state legislatures to enact and some state courts to enforce stricter procedural bars to post-conviction relief. *See, e.g., Ga.Code Ann.* § 9–14–48(d) (1991); *Valenzuela v.*

*Newsome,* 253 Ga. 793, 325 *S.E.*2d 370, 372–74 (1985); *Rivers v. State,* 250 Ga. 303, 298 *S.E.*2d 1, 7 n. 3 (1982); *Evans v. State,* 441 *So.*2d 520 (Miss.1983), *cert. denied,* 467 *U.S.* 1264, 104 *S.Ct.* 3558, 82 *L.Ed.*2d 860 (1984); *Parker v. State,* 649 *S.W.*2d 46, 53–55 (Tex.Crim.App.), *cert. denied,* 464 *U.S.* 997, 104 *S.Ct.* 496, 78 *L.Ed.*2d 689 (1983); Tabak and Lane, *supra,* 55 *Albany L.Rev.* at 42. Similarly, the Appellate Division here sought to preclude federal habeas review by expressly relying on *Rule* 3:22–4 to bar defendant's ineffective-assistance-of-counsel claim. Our reversal of that procedural default restores defendant's opportunity to obtain a ruling on the merits of his federal habeas petition. Thus, this case invites us to examine enforcement of our procedural rules governing post-conviction relief in light of the potential consequences for federal habeas review.

## IV

The broad issue before us is the extent to which our lower courts should make express rulings on state procedural grounds, thereby foreclosing potential avenues of federal habeas relief. Judicial enforcement of our procedural rules achieves the important state goals of finality and judicial economy. Indeed, *Rule* 1:1–2 mandates that New Jersey's court Rules

shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.

Discussing the policy behind *Rule* 3:22–4, this Court recently stated that "[w]ithout procedural rules requiring the consolidation of issues, litigation would continue indefinitely in a disconnected and piecemeal fashion." *Mitchell, supra,* 126 *N.J.* at 584, 601 *A.*2d 198. Consistent application of our procedural rules prevents the abuse of post-conviction proceedings. Nevertheless, this Court has repeatedly emphasized that procedural rules "are not an end unto themselves, but a means of serving the ends of justice." *Viviano v. CBS,* 101 *N.J.* 538,

550–51, 503 *A*.2d 296 (1986); *see Mitchell, supra,* 126 *N.J.* at 578–79, 601 *A*.2d 198.

The Attorney General urges our courts to follow *Harris* in order to preclude federal habeas review and thereby foster finality and reduce federal intrusions into our state criminal and constitutional law. However, *Harris* articulates principles to be applied by federal courts, not state courts. *See Evans, supra,* 441 *So*.2d at 530–33 (Robertson, J., dissenting). The Supreme Court's deference to state procedural bars is based largely on comity and federalism—concerns that simply do not apply when this Court reviews procedural rulings by our lower courts. Indeed, considerations of federalism dictate that our state courts should enforce New Jersey's post-conviction rules without attempting to emulate the federal habeas decisions. *See D'Amico v. Manson,* 193 Conn. 144, 476 *A*.2d 543, 545–56 (1984) (applying less-restrictive standard to state post-conviction petitions "despite the later development of more restrictive" *Sykes* standard for federal habeas review).

From our state perspective, finality is achieved when our courts grant or deny post-conviction relief. Any state court judgment later overturned by federal habeas review presumably will have been undeserving of finality. We are not so convinced of our infallibility, or so jealous of our sovereignty, as to deem federal habeas review an undesirable intrusion on our adjudications. As Justice Harlan observed, "the threat of habeas serves as a necessary additional incentive for trial and appellate courts throughout the land to conduct their proceedings in a manner consistent with established constitutional standards." *Desist v. United States,* 394 *U.S.* 244, 262–63, 89 *S.Ct.* 1030, 1041, 22 *L.Ed*.2d 248, 263 (1969) (Harlan, J., dissenting); *see also Teague v. Lane,* 489 *U.S.* 288, 306, 109 *S.Ct.* 1060, 1073, 103 *L.Ed*.2d 334, 353 (1989) (quoting Justice Harlan's observation approvingly); *State v. Lark,* 117 *N.J.* 331, 342, 567 *A*.2d 197 (1989) (same). Where meritorious issues are presented, our interest in affording defendants access to both state post-conviction and federal habeas review outweighs our

interest in finality through an unnecessarily-rigid enforcement of state procedural rules. Simply put, considerations of finality and procedural enforcement count for little when a defendant's life or liberty hangs in the balance.

We acknowledge the continuing significance of procedural requirements that affect the availability of state post-conviction review. Thus, other than challenges to the legality of a sentence, petitions for post-conviction relief must be filed within five years of the judgment or sentence in the absence of facts demonstrating excusable neglect justifying delay. *R.* 3:22–12; see *Mitchell, supra,* 126 *N.J.* at 575–83, 601 *A.*2d 198. In addition, a prior adjudication on the merits ordinarily constitutes a procedural bar to the reassertion of the same ground as a basis for post-conviction review. *R.* 3:22–5. *See, e.g., Sloan, supra,* 226 *N.J.Super.* at 612, 545 *A.*2d 230; *State v. Rosen,* 110 *N.J.Super.* 216, 219, 265 *A.*2d 152 (App.Div.1969). Perhaps the most significant procedural bar is that imposed by *Rule* 3:22–4 and implicated by this appeal, precluding the assertion of grounds for post-conviction relief that could have been, but were not, raised in prior proceedings, unless one of the prescribed exceptions, *supra* at 459, 609 *A.*2d 1284, is determined to apply. As we have noted, the procedural limitations on post-conviction review "are imposed for a purpose," and while not "endors[ing] their rigid, mechanical application," we anticipate that the procedural limitations and their exceptions will "be conscientiously applied to the unique circumstances of each case." *Mitchell, supra,* 126 *N.J.* at 589, 601 *A.*2d 198.

However, we generally have declined to read the exceptions to *Rule* 3:22–4 narrowly. In *Smith, supra,* 43 *N.J.* at 74, 202 *A.*2d 669, we held that "an error [that] denies fundamental fairness in a constitutional sense and hence denies due process of law" can be asserted in post-conviction proceedings as long as it was not litigated previously. Although we have construed the "fundamental injustice" exception to apply only when a petitioner's guilt or innocence is involved, *Cerbo, supra,* 78 *N.J.* at 605, 397 *A.*2d 671, we have generously interpreted *Rule*

3:22-4(a) to permit the assertion of claims that could not reasonably have been raised in earlier proceedings. For example, in *State v. Nash*, 64 *N.J.* 464, 317 *A.*2d 689 (1974), counsel had failed to make a claim based on a decision issued before the conclusion of defendant's appeal. There, we noted our "hesitat[ion] to make the availability of a retroactive principle in a criminal context turn on whether an attorney has read recent advance sheets." *Id.* at 475, 317 *A.*2d 689. We concluded that defendant did not have a reasonable opportunity to raise his claim in an earlier proceeding. Thus, *Nash* suggests that defendants should not pay the exacting price for state procedural forfeitures that result from the ignorance or inadvertence of their counsel—regardless of whether counsel's error violates constitutional standards. See *Coleman, supra,* 501 *U.S.* at ——, ——, 111 *S.Ct.* at 2576, 2576–77, 115 *L.Ed.*2d at 683, 684 (Blackmun, J., dissenting); Meltzer, *supra,* 99 *Harv.L.Rev.* at 1216.

New Jersey's system of state post-conviction review apparently affords criminal defendants a broader opportunity to raise constitutional claims than does federal habeas review. It would be a bitter irony indeed if our courts, in an attempt to accommodate the Supreme Court's retrenchment of federal habeas review, were artificially to elevate procedural rulings over substantive adjudications in post-conviction review, at a time when the Court's curtailment of habeas review forces state prisoners to rely increasingly on state post-conviction proceedings as their last resort for vindicating their state and federal constitutional rights. When appropriate, the procedural bars imposed by *Rules* 3:22-4, 3:22-5, and 3:22-12 may be asserted to preclude post-conviction relief, but their use should not be shaped or influenced in the slightest by the federal courts' restrictive standards for allowing or disallowing habeas review. In such instances, an abbreviated reference to underlying meritorious issues may be useful in demonstrating that reliance on the procedural bar has caused no injustice. However, when meritorious issues are raised that require analysis

and explanation, our traditions of comprehensive justice will best be served by decisions that reflect thoughtful and thorough consideration and disposition of substantive contentions.

We reverse the judgment of the Appellate Division and remand to the trial court for an evidentiary hearing on defendant's ineffective-assistance-of-counsel claim and a new determination of the merits of that claim.

GARIBALDI, J., concurs in the result.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.