**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3354-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KASHIFE H. WYCKOFF,

    Defendant-Appellant.

_____

Submitted January 15, 2026 – Decided March 27, 2026

Before Judges Mawla and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 18-08-0751.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kashife H. Wyckoff appeals from the March 18, 2024 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

On June 6, 2018, Vineland police received a 9-1-1 call reporting an individual with a gun. When Officer Angel Tellado and another officer responded to the location identified by the caller, they observed three individuals together on Pear and Fourth Streets: defendant was sitting on the curb with a black backpack next to him; Sammy Moye, to defendant's left, was sitting on a milk crate; and Terry Moore, to Moye's left, was sitting on a boulder, also referred to as a block, with a blue backpack next to him. As Officer Tellado waited for backup officers, he observed Moye move the black backpack to his left, and then saw Moore move the same backpack, placing it directly in front of him.

After additional officers arrived, they ordered the three men to the ground. Officer Tellado moved the blue backpack away from them and then picked up the black backpack, which was partially open, and immediately saw the butt of a gun in the bag. He alerted the other officers, took the handgun out of the bag, ejected the magazine, and removed another bullet from the chamber. Tellado

2

found another magazine in the backpack, along with defendant's birth certificate and a receipt bearing the name of defendant's former spouse.

Defendant was arrested, administered Miranda[1] warnings, and taken to the police station. Although defendant initially declined to give a statement, when they arrived at the station, he asked Officer Tellado, "Where's my receipt?" As Tellado asked, "What receipt?" defendant said, "It's in my bag." The conversation was admitted into evidence at trial to prove defendant's ownership of the black backpack.

A Cumberland County grand jury issued a four-count indictment charging defendant with: third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1) (count one); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) (count two); fourth-degree possession of hollow point bullets, N.J.S.A. 2C:39-3(f)(1) (count three); and second-degree possession of a handgun by a convicted person, N.J.S.A. 2C:39-7(b)(1) (count four).

During argument on defendant's pretrial motion to dismiss the indictment, the assistant prosecutor described two calls received by the county 9-1-1 dispatch the day of the incident. At 2:38 p.m., the initial caller, later identified

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

as Joshua Graham,[2] reported an individual pointed a gun at him.  Graham described the suspect, said he had a black book bag, and provided the location of the incident.

Graham called county 9-1-1 again at 2:47 p.m. and told the operator, "I already called them, but they got the wrong guy.  I'm trying to direct them to the right dude."  The call was transferred to Vineland emergency, and at 2:49 p.m. Graham told the Vineland operator, "The dude is sitting right there on a concrete block, right there on Pear and Fourth."  The operator advised Graham a police officer had spotted the suspect, but the officer did not want to approach him at that point.  Graham responded, "He's sitting right there at the block where they sit at, but he's sitting down on the curb, in front of the block."

Surveillance video showed that when Graham made the second 9-1-1 call, Officer Tellado had not yet approached defendant.  Body-worn camera footage from a different group of responding officers depicted those officers speaking to other individuals in the area at that time.  During trial, neither party called Graham as a witness nor played the recordings of his 9-1-1 calls.

The jury convicted defendant of counts two, three, and four but found him not guilty of count one.  He was sentenced to an aggregate term of sixteen years

---

[2]  Graham was incorrectly identified as Joshua Green during the PCR hearing.

A-3354-23

with an eight-year parole ineligibility term. We affirmed the trial court's denial of defendant's motions to suppress and for judgment of acquittal, the admission of defendant's statement into evidence, and the sentence imposed. State v. Wyckoff, No. A-0607-19 (App. Div. Feb. 7, 2022) (slip op. at 6-16). The Supreme Court denied defendant's petition for certification. State v. Wyckoff, 251 N.J. 369 (2022).

Defendant filed a self-represented petition for PCR, followed by a counseled brief in support. Although defendant raised several points, we confine our discussion to the issues raised in this appeal: trial counsel was ineffective for failing to adequately investigate the 9-1-1 call, which contained exonerating information; and trial counsel had a conflict of interest in representing defendant because he previously represented Graham.

After considering argument, Judge William F. Ziegler denied defendant's petition without an evidentiary hearing, explaining the reasons for his decision in a written opinion. As to defense counsel's alleged failure to investigate the 9-1-1 call, the judge noted "[c]ounsel's decisions are influenced by many factors" and therefore "courts grant broad deference to these strategic decisions." He found the 9-1-1 call was not relevant to the defense because it was made prior to any officers approaching where defendant was sitting.

Therefore, defendant failed to show counsel's performance deprived him of a fair trial as guaranteed by the Sixth Amendment.

As to defense counsel's alleged conflict of interest, the judge found defendant did not present sufficient evidence showing counsel previously represented Graham. Because defendant provided nothing more than "a bare assertion" of a conflict, he failed to establish a prima facie case to warrant an evidentiary hearing on the issue.

On appeal, defendant raises the following point for our consideration:

> DEFENDANT'S CONSTITUTIONAL RIGHT TO COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO ADEQUATELY INVESTIGATE A 9-1-1 CALL WHICH CONTAINED INFORMATION EXONERATING THE DEFENDANT AND FOR REPRESENTING DEFENDANT WHILE UNDER A CONFLICT OF INTEREST.

## II.

To succeed on a claim of ineffective assistance of counsel, a defendant must establish by a preponderance of the evidence both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). State v. Gaitan, 209 N.J. 339, 349-50 (2012). First, a "defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. A defendant must

6

demonstrate "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. The Constitution requires "reasonably effective assistance," so an attorney's performance may not be attacked unless it was not "'within the range of competence demanded of attorneys in criminal cases'" and instead "fell below an objective standard of reasonableness." Id. at 687-88 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under the second Strickland prong, a defendant must "affirmatively prove" with "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 693-94). "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694).

Because the judge denied the petition without an evidentiary hearing, we review the order de novo. State v. Harris, 181 N.J. 391, 421 (2004). We review the decision to deny the petition without an evidentiary hearing for abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992).

Defendant alleged counsel was ineffective for not investigating a 9-1-1 call containing exculpatory information; namely, Graham's statement the police "got the wrong guy." The record reflects that call was made prior to police approaching defendant, so "the wrong guy" did not refer to defendant. In addition, the details Graham provided in both calls were consistent with defendant's appearance and location, and therefore the calls were not exculpatory. Thus, counsel's decision not to further investigate Graham's 9-1-1 calls was within the range of reasonable professional assistance and did not deprive defendant of a fair trial.

We are also unpersuaded by defendant's claim trial counsel had a conflict of interest. A defendant may not rely on "bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, the petition "must allege facts sufficient to

demonstrate counsel's alleged substandard performance." Ibid. As the judge found, defendant provided nothing except his own statement alleging counsel represented Graham in the past, which is insufficient to establish a claim of ineffective assistance.

Finally, because defendant did not establish a prima facie case for relief, material issues of disputed fact, or that an evidentiary hearing was necessary, Judge Ziegler's denial of his request for a hearing was not an abuse of discretion. R. 3:22-10(b); see Preciose, 129 N.J. at 462-63.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

9                                                                    A-3354-23