**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1497-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JERMAINE VAUGHN,

    Defendant-Appellant.

_____

Submitted May 1, 2018 — Decided July 30, 2018

Before Judges Hoffman and Mitterhoff.

On appeal from Superior Court of New Jersey,
Law Division, Mercer County, Indictment No.
96-12-1402.

Joseph E. Krakora, Public Defender, attorney
for appellant (Steven E. Braun, Designated
Counsel, on the briefs).

Angelo J. Onofri, Mercer County Prosecutor,
attorney for respondent (Narline Casimir,
Assistant Prosecutor, of counsel and on the
brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Appellant Jermaine Vaughn appeals from the denial of his second petition for post-conviction relief (PCR) and motion for a new trial. We affirm.

On August 27, 1996, a Mercer County grand jury returned Indictment No. 96-12-1402 charging defendant Jermaine Vaughn with first-degree felony murder in violation of N.J.S.A 2C:11-3a(3) (count one); first-degree robbery in violation of N.J.S.A. 2C:15-1 (count two);[1] first-degree robbery in violation of N.J.S.A. 2C:2-6 and N.J.S.A. 2C:15-1 (count three); and two counts of second-degree possession of a weapon for an unlawful purpose in violation of 2C:39-4(a) (counts four and five). After a four-day trial concluding on March 23, 1999, the jury convicted defendant of all counts of the indictment. Defendant was sentenced to a term of life imprisonment with a thirty-year minimum period of parole ineligibility to be served consecutively to a sentence imposed in a previous, unrelated indictment.

The conviction arises from a chance encounter between Adrian Davis, defendant and co-defendant Jeremiah Bass during the evening of June 5, 1995. After driving around Trenton, stopping at his home to obtain a black hooded jacket and a green hooded sweatshirt, and consuming a forty-ounce bottle of malt liquor, defendant and

_____

[1] The trial court granted defendant's motion to dismiss count two of the indictment.

co-defendant decided they needed money to get into parties. Both men were armed. As they walked down a street, defendant had his revolver in his hand and noticed the victim walking towards him. The man walked right up to defendant and co-defendant. After a momentary struggle, defendant's gun discharged, the man fell to the ground, and defendant and co-defendant walked away. The victim was pronounced dead at the hospital. A woman observed the entire encounter from the front window of her home. When she called the police, she informed the dispatcher that the men had entered Marion Street on foot.

Soon after, police observed two men on Marion Street fleeing the area on foot. After a foot pursuit, during which police observed co-defendant discard his gun and ammunition, the co-defendant was detained and arrested. Although police located a small chrome revolver and a spent .32 caliber shell casing in the pocket of a black jacket in an empty lot, defendant was not arrested until June 9, 1995, when police located him in the hospital recovering from a wound received in another unrelated incident on June 6, 1995. When released from the hospital, police arrested defendant on a warrant issued in connection with the June 6, 1995 incident. At the police station, police advised defendant why he was in custody, and a detective administered his Miranda

rights.[2]  Defendant waived his rights, and approximately two hours later provided a formal statement in which he admitted shooting the victim.  Defendant explained the incident as follows:  "As we got closer to the [victim] he saw my gun, and then he got up on me real quick, grabbed my jacket and pulled me towards him, and [that is] when the gun went off."

At defendant's 1999 trial, Detective Robert Sheehan of the Homicide unit testified that after being conveyed to the Trenton Police Department, defendant was placed in an interview room and advised that he was there for an investigation.  Sheehan testified that defendant appeared coherent and clear-minded and stated he appeared to be "a very intelligent young man."  The detective testified that he advised defendant of his Miranda rights, reviewed the waiver of rights form with him, and ensured that defendant understood his rights.  Defendant subsequently waived his rights by affixing his signature on the signature line without asking Sheehan for any clarification.  Detective Sheehan testified that after defendant's waiver, he was uncooperative and unwilling to speak, and made such statements as:  "I'm not going to tell you anything;" "there's nothing you can do to me;" and "you don't have anything on me."  After Detective Sheehan informed defendant of

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1497-16T1

the evidence against him including witness testimony, recovered weapons, ballistics, and fingerprints, defendant told Detective Sheehan that "the guy didn't have to be a hero" and that he would tell him what happened.

Sheehan testified that he conducted a brief interview of defendant, left the room to update his supervisors, and returned to obtain a formal statement. Defendant indicated that he and the co-defendant were each armed and walking down Reservoir Street and "wanted to get some money." When defendant observed the victim walking toward him and the co-defendant, he pulled out his firearm. Defendant stated that when the victim saw the firearm, he quickly approached defendant, grabbed his jacket, and pulled defendant towards him, causing the firearm to go off. Defendant stated that he did not mean to shoot the victim. Defendant explained that he and his co-defendant fled the area, and he tossed the firearm and the jacket he was wearing. When asked if he believed that the victim was liable for having been shot, he answered, "yes, because all he had to do was give us the money."

Defendant testified at trial that after he was conveyed to the Trenton Police Department, he was advised of his Miranda rights, and voluntarily waived them. Defendant testified that he agreed to provide Detective Sheehan with his statement. Defendant denied telling Detective Sheehan that the victim did not have to

be a hero. Defendant also denied that he intended to rob the victim and he testified that he did not ask him for money. On cross-examination, defendant admitted that he was given the opportunity to review his statement, initialed each page, and did not make any changes.

On defendant's direct appeal, we affirmed defendant's conviction and sentence, but remanded for a Miranda hearing. We instructed the trial judge to determine whether defendant had invoked his right to remain silent, an issue he had not raised either before or during trial. State v. Vaughn, No. A-6299-98 (App. Div. June 26, 2001) (slip op. at 12-13).

The remand hearing was conducted by the same judge that presided over defendant's trial. At the hearing, Detective Sheehan testified that after waiving his Miranda rights, defendant was uncooperative and made comments that there was no evidence against him. Detective Sheehan testified that he informed defendant of the evidence against him. On cross-examination, he explained that when he testified at trial that defendant was uncooperative, he did not mean that defendant stopped speaking. Rather, defendant wanted to know what evidence the police had against him.

Defendant testified that he asserted his right to remain silent but felt compelled to give a statement because Detective Sheehan continued to tell him what evidence was obtained against

him.  On cross-examination, defendant conceded that he testified at trial that he was advised of his <u>Miranda</u> rights, waived them voluntarily, signed a written statement, and did not indicate that he invoked his right to remain silent.  The trial judge on remand found that Detective Sheehan's testimony was credible and ruled that defendant never truly invoked his right to remain silent, but provided his oral and written statements knowingly, intelligently, and voluntarily.  In that regard, the court found as follows:

> [T]his court does hereby today, for purposes of this hearing, reiterate all of its findings made on the record on March 3, 1999, to support the determination that the defendant's statements were indeed admissible and the court then was convinced beyond a reasonable doubt that the defendant was given his Miranda rights, that he understood them, that he waived them, that he did so knowingly, voluntarily, and intelligently, and that he thereupon knowingly, voluntarily, and intelligently provided the statements which the court then admitted.
>
> The narrow focus of the proceedings today, as indicated, is whether or not the defendant invoked his right to remain silent. In that regard the court heard testimony from Detective Robert Sheehan who essentially repeated large portions of his testimony previously provided and also supplemented that testimony.
>
> . . . .
>
> Now, on cross-examination defense counsel articulately tested the credibility of this witness.  And the detective did concede that in his testimony at the March 17, 1999

trial date that indeed the detective testified that the defendant was uncooperative and the defendant told the detective "I'm not going to tell you anything. There's nothing you can do to me," or words of that effect. "You don't have anything on me." The detective next explained, however, that when he testified that the defendant was not willing to speak, he also—namely the defendant—also followed up quickly with "Until he asked me what we had on him and I told him." The detective summed up by saying, "It was very simple. The defendant was advised of his rights. He did not want to speak. I advised him what we had on him. Then he spoke to me and gave me a statement all in the same conversation without any undue passage of time."

Furthermore, Detective Sheehan testified that essentially this defendant never did stop talking. And he further stated "I couldn't stop the defendant from talking," supporting the witness' testimony that there was no passage of time here; that indeed this was one continuous conversation that they were having.

Now, in opposition to that testimony, the defendant took the stand and with regard to this issue testified that he was brought to the Trenton Police Department on Friday June 9, 1995. He was in a room with Detective Sheehan. The detective advised him of his right to remain silent. The defendant testifies today for the first time on this issue, "I advised him I did not want to talk to him about it. We kept going back and forth. Eventually I gave him a formal statement."

On cross-examination, the defendant conceded that he recalled being given his rights, that he signed the form—both parts, that he waived his rights, including his right to remain silent. He conceded yes, I signed it. He further conceded in cross-examination

this morning that at trial on March 18, he recalls being asked questions regarding the giving of the statement and the questions regarding the understanding of his rights. He further conceded that he agreed everything was fine and that at no place or time at the trial did he indicate the exercise of his right to remain silent.

The court finds that there is truly no inconsistency in the testimony of Detective Sheehan and the defendant. Detective Sheehan, this court finds . . . is a highly experienced law enforcement officer with well over thirty years of experience in working on major cases, that he was the lead detective on this case, and that it was his obligation to investigate the murder of Adrian Davis, that Jermaine Vaughn was a suspect, that he was properly brought to police headquarters for the conduct of the detective's investigation. The court reiterates the finding that the defendant was meticulously given all of his Miranda rights and indeed that he signed an acknowledgment to that effect, as well as the waiver of those rights. And the subject matter of this hearing is what happened after the defendant signed the rights form.

Clearly this court finds there was a conversation. And from the testimony of the detective the defense urges, based on the language that at first he was reluctant to talk to me or hesitant to talk to me, that therefore that constituted an exercise of the right to remain silent. In addition, the defendant urges that based upon the testimony of the detective at the [March 17, 1999] trial wherein the defendant told the detective "I'm not going to tell you anything," that that constituted an irrevocable right to remain silent which barred Detective Sheehan from speaking to the defendant any further.

A-1497-16T1

The court finds, based on the totality of the circumstances herein, quite to the contrary. The court finds that the statement "I'm not going to tell you anything" is taken out of context because that was immediately followed by statements of defendant "There's nothing you can do to me. You don't have anything on me," but immediately followed in the same conversation with the defendant in the same breath, as Detective Sheehan testifies and this court finds, asking the detective what do you have on me, followed by Detective Sheehan's response as to the nature of the evidence. . . . [B]ut nonetheless the court finds that this is one continuous conversation.

The defendant did not testify that there was a great lapse of time. Indeed, he had the opportunity to do so, but did not provide this court with any statement as to a lapse of time. So, effectively, the court accepts the testimony and finds Detective Sheehan's testimony to be highly credible that this was one continuous conversation, that the defendant was exceedingly talkative and, to put it in Detective Sheehan's own words, the defendant never did stop talking and I couldn't stop the defendant from talking.

Now, the court further finds that not only is the credibility of Detective Sheehan very high . . . but the court observed his credibility from the witness stand and finds that he was truthful, that he had recollection of those matters that were important to him, that certainly he couldn't recall every small detail of what he had said on two prior occasions. The court further finds that he has no interest in the outcome of this case.

To the contrary, the court finds that the defendant's credibility is not high and the court does not accept his statements as true

10

to the extent that they vary from Detective Sheehan's. . . .

Now, based on these findings, the court further finds that the defendant truly never did invoke his right to remain silent by the mere use of the phrase "I'm not going to tell you anything," Or, put another way, if one were to accept the fact that there is some doubt as to whether he did, this court's alternative finding was that he gratuitously continued the conversation offering his explanation after asking the question, "What do you have on me."

The court finds that the duty to clarify urged by the defendant is not applicable under the facts of this case. The duty does not apply to a continuous conversation. . . .

When the defendant urges the position that there was an absolute duty of the State through Detective Sheehan to stop any conversations, the court finds that the case law does not support that proposition on the facts of this case and, once again, the totality of the circumstances muse be taken into consideration.

Based on his findings, by order and opinion dated June 7, 2002, the trial judge held that defendant had not invoked his right to remain silent and that his confession was properly admitted. We affirmed defendant's conviction on appeal, State v. Vaughn, No. A-3921-01 (June 7, 2004) (slip op. at 10), and the Supreme Court denied certification, State v. Vaughn, 182 N.J. 143 (2004).

Defendant then filed a petition for PCR. In his PCR petition, defendant argued that the arrest warrant for the shooting was not properly issued; therefore, he alleges his post-arrest statement should have been suppressed. Moreover, defendant argued that trial counsel failed to communicate with defendant prior to trial, failed to conduct an investigation and failed to interview witnesses, failed to file the necessary motions, and failed to object to jury instructions. Defendant highlighted trial counsel's failure to explore an intoxication defense. In addition, defendant asserted, "direct appeal counsel was ineffective in that he failed to raise necessary and important issues." Defendant did not raise any issue that his Miranda rights were violated.

At defendant's 2006 PCR hearing, Detective Sheehan testified that he retired from his position with the Trenton Police Department in July 2004. Prior to retiring, the detective testified that he suffered a brain seizure in May or June of 2004 that caused him to suffer from memory loss. Because of his memory loss, Detective Sheehan did not have any independent recollection of his investigation or the trial and had to testify from his reports. Sheehan denied having any medical issues during the trial and the prior hearings that would have affected his ability to recollect.

At the conclusion of the evidentiary hearing, the trial court denied defendant's PCR petition by order and opinion dated January 10, 2007. We affirmed the judge's denial of PCR. State v. Vaughn, No. A-2877-06 (App. Div. October 14, 2009) (slip op. at 8).

Defendant then filed the within application for PCR and a new trial based on the newly discovered evidence of Detective Sheehan's medical condition. By order dated December 11, 2014, the PCR judge denied defendant's petition. In an accompanying letter opinion, the judge noted that Rule 3:20-1 permits the court to grant a new trial if required in the interests of justice. Concerning defendant's claim that "newly discovered evidence" warranted granting him a new trial, the judge observed that the proffered evidence must be material and not merely cumulative, must be discovered after the trial and not reasonably discoverable prior thereto, and must be of a nature as to probably have affected the jury's verdict. The judge found that because Detective Sheehan suffered his seizure a couple of months before July 2004, "[t]his in absolutely no way had any impact on his testimony and memory in 1999, when [defendant was] convicted and sentenced." This appeal ensued.

On appeal defendant makes the following arguments:

POINT I
THE LAW DIVISION SHOULD HAVE ORDERED AN EVIDENTIARY HEARING TO DETERINE WHETHER DETECTIVE SHEEHAN WAS COMPETENT TO TESTIFY AT THE MIRANDA HEARINGS AND AT THE 2002 REMAND HEARING IN LIGHT OF THE EVIDENCE [OF] HIS BRAIN SEIZURE WHICH ONLY CAME TO LIGHT AT THE 2006 PCR HEARING

POINT II
A NEW TRIAL IS WARRANTED BECAUSE OF NEWLY DISCOVERED EVIDENCE

POINT III
DEFENDANT WAS ENTITLED TO RAISE BOTH A SECOND PETITION FOR POST-CONVICTION RELIEF AND A MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE, AND THE CONFUSION OF THE LAW DIVISION BETWEEN THE TWO DIFFERENT TYPES OF REMEDIES REQUIRES A REMAND

Defendant argues,

[w]hat Detective Sheehan did and said reflects directly upon whether defendant's Miranda rights were scrupulously adhered to by Detective Sheehan, and whether the detective had sufficient recollection to testify regarding the obtaining of the confession without violating defendant's rights against self-incrimination. If Detective Sheehan's mental health was impaired at the time he interviewed defendant, then his testimony may not have been accurate, and defendant conceivably was denied his right to remain silent.

In effect, defendant is seeking to overturn the trial judge's 2002 decision, which we affirmed, that defendant never invoked his right to remain silent.

    I.   The trial court's denial of an evidentiary hearing.

14

Our review of the factual findings of the trial court on a petition for PCR is limited. <u>State v. Nash</u>, 212 N.J. 518, 540 (2013) (citing <u>State v. Carter</u>, 85 N.J. 300, 314 (1981)). We uphold the factual findings of the trial court if they are supported by sufficient credible evidence in the record. <u>Ibid.</u> (citing <u>State v. Harris</u>, 181 N.J. 391, 415 (2004)).

Pursuant to <u>Rule</u> 3:22-2, a defendant may seek PCR on four grounds: (a) substantial denial in the conviction proceedings of a defendant's state or federal constitutional rights; (b) the court's lack of jurisdiction; (c) an unlawful sentence; or (d) any habeas corpus, common-law, or statutory ground for collateral attack. Defendant bears the burden by a preponderance of the credible evidence that he is entitled to relief. <u>State v. Preciose</u>, 129 N.J. 451, 459 (1992). To sustain that burden, defendant must allege and articulate specific facts, which "provide the court with an adequate basis on which to rest its decision." <u>State v. Mitchell</u>, 126 N.J. 565, 579 (1992).

According to <u>Rule</u> 3:22-10(b),

> A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief.

The rule provides the court with discretion whether to conduct an evidentiary hearing. State v. Jones, 219 N.J. 298, 311 (2014). "If there are disputed facts regarding entitlement to [PCR], a hearing should be conducted." State v. Russo, 333 N.J. Super. 119, 138 (App. Div. 2000). Essentially, "to establish a prima facie case, a defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." Id. at 141.

In this case, the trial court did not abuse its discretion in denying defendant an evidentiary hearing. Defendant has failed to establish a prima facie case that he is entitled to PCR. See Preciose, 129 N.J. at 459. He has failed to articulate any facts that, if proven, would entitle him to relief. See Mitchell, 126 N.J. at 579. The only fact articulated to support his claim is that Detective Sheehan had a seizure in 2004 that impaired his memory. Defendant has not certified to any facts or presented certifications or affidavits based on personal knowledge from anyone, including Detective Sheehan, to suggest the detective had any memory problems in 1999 or 2002. Instead, defendant relies on an unfounded theory based on pure speculation.

Moreover, defendant's claims are simply belied by the trial judge's thorough findings and decision on remand, finding that

16                                                              A-1497-16T1

Detective Sheehan's testimony at trial in 1999 was entirely consistent with his testimony on remand three years later in 2002. Indeed, the judge found that defendant's account was largely consistent with Detective Sheehan's account. Therefore, there are no disputed facts requiring a hearing for resolution.

II. The trial court's denial of defendant's motion for a new trial based on newly discovered evidence.

We find equally unpersuasive defendant's argument that he is entitled to a new trial based on newly discovered evidence. Newly discovered evidence that is sufficient to warrant a new trial is evidence that is: (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted. Nash, 212 N.J. at 549. In this case, defendant has failed to show how the evidence is material or of the sort that would probably change the jury's verdict.

With regard to a motion for a new trial, Rule 3:20-1 provides in pertinent part that:

> The trial judge on defendant's motion may grant the defendant a new trial if required in the interests of justice . . . the trial judge shall not, however, set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly

and convincingly appears that there was a manifest denial of justice under the law.

Furthermore, Rule 2:10-1 similarly requires that a trial court's ruling on a motion for a new trial shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law.

When a defendant seeks a new trial based on newly discovered evidence, the standard is well established.

> Evidence is newly discovered and sufficient to warrant the grant of a new trial when it is[:] '(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted.'

Nash, 212 N.J. at 540, (citing State v. Carter, 85 N.J. 300, 314 (1981)); See also State v. Ways, 180 N.J. 171, 187 (2004).

Under prong one, "'[m]aterial evidence is any evidence that would have some bearing on the claims being advanced,' and includes evidence that supports a general denial of guilt." Id. Prong one and prong three are inextricably intertwined, Ibid., and "[t]he power of the newly discovered evidence to alter the verdict is a central issue, not the label to be placed on that evidence." Ways, 180 N.J. at 191-92.

Here, defendant asserts that evidence that Detective Sheehan suffered a brain seizure in the spring of 2004 is newly discovered

18

evidence showing he was unable to recollect facts to which he testified in 1999 and 2002. The record does not reflect any indication that Detective Sheehan's inability to recollect was an issue during the trial and the remand hearing. Indeed, on remand the trial court found Detective Sheehan highly credible, and found that his testimony was consistent with his prior testimony.

Furthermore, defendant's assertions do not satisfy the State v. Carter test. 85 N.J. at 314. Detective Sheehan's brain seizure of 2004 does not constitute material evidence to support defendant's claim that Detective Sheehan suffered from an inability to remember during the 1999 trial and the 2002 remand hearing. Nash, 212 N.J. at 549; Ways, 180 N.J. at 188. Moreover, defendant has failed to show that the newly discovered evidence of Detective Sheehan's 2004 brain seizure would have altered the jury's verdict.

At trial, the jury had the ability to assess Detective Sheehan's credibility and capacity to recollect and rendered a verdict that should not be disturbed. Ways, 180 N.J. at 187; State v. Conway, 193 N.J. Super. 133, 171 (App. Div. 1984). On remand, the judge who presided over the trial found Sheehan's testimony credible and consistent with the detective's testimony three years earlier. Accordingly, there is no basis to grant a new trial.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION