**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4932-17T4

STATE OF NEW JEREY,

     Plaintiff-Respondent,

v.

AARON J. ELLIS, a/k/a AARON
JOHN ELLIS, AARRON ELLIS,
and AARON ELLOS,

     Defendant-Appellant.

_____

Submitted October 22, 2019 – Decided November 4, 2019

Before Judges Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-04-0470.

Joseph E. Krakora, Public Defender, attorney for appellant (Phuong Vinh Dao, Designated Counsel, on the brief)

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (David Michael Liston, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Aaron Ellis appeals from the April 30, 2018 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I

We begin by summarizing the facts established in defendant's trial, which we set forth at length in our November 28, 2016 opinion on direct appeal. State v. Ellis, No. A-0676-14 (App. Div. Nov. 28, 2016) (Slip op.). We highlight the facts relevant to this appeal.

Around 7:00 p.m. on December 28, 2012, K.M., of Mandy's Towing Company, went to the Joyce Kilmer Service Area on the New Jersey Turnpike to assist a group of persons locked out of their minivan. While K.M. worked to unlock the minivan, defendant, an employee of Puleio's Towing, arrived in his truck. According to K.M., defendant exited his truck and walked "aggressively" towards him, carrying his own large lockout tool.

Defendant told K.M. to stop his work because this job was "his call." Apparently, Puleio's Towing had received a call from Turnpike Operations about the minivan two hours earlier. Puleio's Towing sent a message to defendant to respond to the call, but defendant did not notice the message right away. By the

time defendant noticed the message, about one hour later, Turnpike Operations had assigned the job to Mandy's Towing. K.M. testified he did not know Puleio's Towing had received a call about the same job, and continued to work on unlocking the minivan.

Defendant offered to charge the group a cheaper fee, but the group declined his offer. As K.M. continued his work, defendant tried to get in his way and pushed into him. In response, K.M. called Turnpike Operations and confirmed the job belonged to Mandy's Towing, and then handed defendant the phone. As defendant spoke with Turnpike Operations, he continued pushing and trying to stand between K.M. and the minivan, so K.M. pushed defendant back with a "one-handed . . . shove." Defendant alleged K.M. punched him twice in the face, but neither eyewitness saw K.M. punch defendant.[1]

Shortly thereafter, defendant returned to his truck and continued speaking with Turnpike Operations. According to defendant, while in his truck, he attempted to call 911, but the call failed, so he called his "grandmother-in-law" and told her to "call the cops" or "something like that." K.M. testified defendant,

---

[1] In addition, New Jersey State Trooper Robert Kilmurray – who interviewed defendant and took photographs approximately two hours after the incident – testified defendant's face and jaw showed no signs he was punched.

3

still seated in the truck, went into "a thrashing rage," "thrashing his arms all over inside of the truck and bouncing all over." K.M. further testified he saw defendant reach under his seat, grab a four-way tire iron, and hit the inside of the front windshield two or three times, shattering the truck windshield. Defendant denied swinging a tire iron inside his truck and denied breaking the front windshield.

K.M. testified he went over to defendant's truck to "calm him down" and say "no hard feelings," but defendant would not open the door, so K.M. walked away and returned to the minivan. Contrary to K.M.'s testimony, defendant claimed K.M. approached his truck aggressively, banged on his window, and tried to open the truck door himself. K.M. denied these allegations.

Approximately five to seven minutes later, defendant exited his truck and began walking towards K.M., swinging the tire iron. According to K.M., defendant then chased him while swinging the tire iron, eventually hitting him twice – once on the left temple area of his head and once on his left hand. K.M. described dropping to his knee and bleeding "like[] a faucet" from his temple. Defendant then got back in his truck and drove away.

According to defendant, he grabbed the tire iron because he was anxious K.M. would strike him again, and only exited his truck to scare K.M. away. He

said he swung the tire iron in order to defend himself and claimed he only grazed K.M. with it; nevertheless, when K.M. asked defendant to stop, he did so. Defendant said he walked back to his truck after the incident, and K.M. picked up his glasses and completed the paperwork for the job. When K.M. appeared alright, defendant drove away.

The impact of the tire iron left K.M. with a fractured eye socket, internal eye damage, partial loss of vision, persistent jaw pain, and frequent migraines. Treatment of K.M.'s injuries included a surgical implantation of titanium plates around his left eye-socket.

After speaking with K.M., Trooper Kilmurray called Puleio's Towing and obtained defendant's contact information. He called defendant and instructed him to report to the Cranbury Barracks, where he placed defendant under arrest. At 8:57 p.m., defendant gave a videotaped statement.

On January 12, 2014, the matter proceeded to trial. The State presented the recording of defendant's videotaped custodial interview. In the interview, the following colloquy occurred between defendant and Trooper Kilmurray:

> [Defendant]: [I]f you're the judge, how am I wrong?
>
> [Trooper]: You're asking me honestly?
>
> [Defendant]: Yes.

. . . .

[Defendant]:   It's wrong to leave?

[Trooper]:   [I]t's wrong to leave. . . . [I]f you're there and [the victim is] there, and now we have the witnesses there, we can start . . . working this thing out. But . . . as you leave, it looks really bad for you to leave.

. . . .

[Trooper]:   [I]t doesn't bode well for you . . . when you don't hang . . . around. Because if you're in the right, if you felt [you] didn't do anything wrong[.] [I]f I felt that way, . . . if the guy pushed me, I probably wouldn't hit him in the face with a tire iron . . . but if someone pushed me or had punched me, I'm going to take a swing back. [When] the cops show up, . . . I'm going to wait there until the cops get there to say he hit me first, I punched him back, I was protecting myself, ask any of these people. That's what I would do. And I think that's what you would do, too. That's what most people that think they're right would do. People that think that they fucked up . . . [think] I got to get away from this situation and cool down before it gets worse. Is the way it seems to me. . . . that's how it looks to me.
To be honest with you. You . . . asked me . . . that's how it looks to me.

. . . .

6

[Trooper]: I mean, fortunately for you, this guy . . . he must be a tough dude, because if I got hit in the head with . . . a tire iron, . . . and my eye was swollen . . . shut, I'd be down for the count. And he was back up on his feet talking to us when he got there[.]

[Defendant]: Yeah.

[Trooper]: I mean you got to be thankful . . . because you could have . . . killed him. Do you understand?

[Defendant]: I understand.

The next day, the trial judge addressed Trooper Kilmurray's statements regarding the significance of defendant departing from the scene and hitting K.M. in the head, and concluded his comments amounted to opinion rather than evidence. Defense counsel explained he included the statements as part of his trial strategy but agreed with the trial judge's suggested curative instruction.

The judge then provided the jury the following instruction:

> Toward the end of the statement, the trooper had expressed an opinion about defendant's actions that evening, or earlier in the evening. What I want to tell you is [Trooper Kilmurray's] opinion is irrelevant. It's your opinion about the facts and defendant's conduct that matters. You cannot make an inference about defendant's conduct merely because the trooper came to a particular opinion. It's up to you as jurors to determine the facts and to decide the inferences that are to be drawn from those facts.

7

The jury found defendant guilty of second-degree aggravated assault causing serious bodily injury, N.J.S.A. 2C:12-1(b)(1), third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C-12-1(b)(2); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d).[2]

On March 7, 2014, the trial judge sentenced defendant. Defense counsel urged the court to find mitigating factors number five, N.J.S.A 2C:44-1(b)(5) (the victim induced or facilitated defendant's conduct); six, N.J.S.A 2C:44-1(b)(6) (defendant has or will compensate the victim); and eleven, N.J.S.A. 2C:44-1(b)(11) (imprisonment would entail excessive hardship), weighed in favor of defendant.

The judge merged the two third-degree convictions into the second-degree aggravated assault causing serious bodily injury conviction. The judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk of recidivism); six, N.J.S.A. 2C:44-1(a)(6) (criminal history and seriousness of conviction); and nine, N.J.S.A. 2C:44-1(a)(9) (deterrence). After finding that only mitigating factor eleven applied, the judge sentenced defendant to a ten-year term of

---

[2] The jury found defendant not guilty of third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2; and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1).

A-4932-17T4

imprisonment, subject to eighty-five percent ineligibility for parole, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant appealed his conviction and sentence, and we affirmed. Ellis, slip op. at 18. Defendant argued his trial counsel's failure to object to Trooper Kilmurray's statements regarding the significance of defendant departing from the scene and of him hitting the victim in the head with a tire iron amounted to ineffective assistance of counsel. Id. at 14. We declined to consider that argument, concluding it was more suitable for PCR. Ibid. We found no plain error "[g]iven the relatively benign nature of the trooper's statements as well as the trial court's thorough curative instructions . . ." Id. at 15. We also addressed whether the trial judge imposed an excessive sentence and found the judge balanced "all applicable factors" and concluded we had "no basis to interfere with the judge's reasoned and appropriate exercise of discretion." Id. at 18.

In December 2016, defendant filed the PCR petition under review. On April 30, 2018, the PCR judge heard oral argument on defendant's petition. PCR counsel argued the trial judge provided an inadequate jury instruction the day after trial counsel failed to object to Trooper Kilmurray's opinion testimony, which "was too little too late" to cure the error. The judge rejected the argument,

concluding that despite the one-day delay, the instruction adequately corrected the error.

The judge addressed whether trial counsel's failure to object to Trooper Kilmurray's testimony amounted to ineffective assistance of counsel and found trial counsel's actions were a "strategic decision" because the trooper's comments suggested defendant expressed remorse. He ruled that, "[e]ven assuming arguendo" trial counsel's performance satisfied the first prong of Strickland,[3] his performance did not satisfy the second prong because the "court instructed the jury not to consider the challenged evidence."

The judge also ruled trial counsel did not err by failing to argue mitigating factors eight and nine at sentencing because the record revealed in 2000 defendant was convicted of aggravated assault, similar in nature to the current circumstances. He ruled "counsel [was] not obligated to argue mitigating factors that have no basis in fact or cannot be established by the circumstances." The judge also ruled appellate counsel did not err by failing to argue mitigating factors eight and nine on direct appeal because appellate counsel did in fact attempt to raise the argument but this court declined to address the argument, concluding it was better suited for PCR.

---

[3] Strickland v. Washington, 466 U.S. 688 (1984).

A-4932-17T4

This appeal followed, with defendant presenting the following arguments:

POINT I

THE PCR COURT ERRED WHEN IT FOUND DEFENDANT HAD FAILED TO ESTABLISH A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL.

(1) Trial counsel allowed Trooper Kilmurray to provide an impermissible opinion as to defendant's guilt.

(2) Trial counsel was ineffective by failing to adequately argue certain aggravating and mitigating factors at sentencing.

(3) Trial counsel's cumulative errors denied his client the right to effective legal representation.

POINT II

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE SENTENCING ISSUES ON DIRECT APPEAL.

POINT III

AS THERE WERE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, AN EVIDENTIARY HEARING WAS REQUIRED.

Following our review of these arguments, in light of the record and applicable law, we affirm.

II

"A petitioner must establish the right to [post-conviction] relief by a preponderance of the credible evidence." State v. Preciose, 129 N.J. 451, 459 (1992). To sustain that burden, the petitioner must set forth specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

A defendant must prove two elements to establish a PCR claim that trial counsel was constitutionally ineffective: first, that "counsel's performance was deficient," that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; accord State v. Fritz, 105 N.J. 42, 58 (1987). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Harris, 181 N.J. 391, 432 (2004) (quoting Strickland, 466 U.S. at 694).

To prove the first element, a defendant must "overcome a strong presumption that counsel exercised reasonable professional judgment and sound trial strategy in fulfilling his responsibilities." State v. Nash, 212 N.J. 518, 542

12

(2013) (internal quotation marks omitted) (quoting State v. Hess, 207 N.J. 123, 147 (2011)). To prove the second element, a defendant must demonstrate "how specific errors of counsel undermined the reliability of the finding of guilt." United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

A

Defendant argues trial counsel provided ineffective assistance of counsel by permitting the jury to hear parts of Trooper Kilmurray's comments during defendant's videotaped custodial interview. Defendant further argues trial counsel failed to ask for a prompt curative instruction from the trial judge.

On defendant's direct appeal, we concluded trial counsel's failure to object to certain portions of Trooper Kilmurray's testimony did not constitute plain error, and the trial judge's curative instruction did not create an unjust result. The PCR judge found trial counsel strategically decided not to object to the Trooper Kilmurray's testimony because the testimony immediately preceding it portrayed defendant as remorseful toward the victim. He also found, even if the decision satisfied the first prong of Strickland, defendant could not satisfy the second prong of Strickland because the error would not have changed the outcome of trial.

A-4932-17T4

The record reveals trial counsel employed a reasonable trial strategy specifically utilizing portions of the comments and opinions expressed by Trooper Kilmurray during his interview of defendant. Trial counsel used the testimony to show that defendant expressed remorse following the incident. The testimony also attempted to establish defendant did not act intentionally and left the scene because he believed the victim sustained only minor injuries. Like the PCR judge, we find defendant failed to overcome the "strong presumption" that his counsel executed trial strategy when he declined to redact the portions of testimony at issue. Nash, 212 N.J. at 542.

We also agree with the PCR judge's finding that the error clearly does not satisfy the second prong of the Strickland test. Even if defendant overcame the strong presumption of trial strategy, the trial judge issued a reasonable curative instruction the following morning. Therefore, the record does not establish a reasonable probability the result would have been different if trial counsel's alleged error never occurred. Harris, 181 N.J. at 432.

B

Defendant also argues the PCR judge erred by declining to find both trial and appellate counsel ineffective for inadequately arguing mitigating factor eight, N.J.S.A. 2C:44-1(b)(8) (defendant's conduct was the result of

circumstances unlikely to recur), and mitigating factor nine, N.J.S.A. 2C:44-1(b)(9) (the character and attitude of defendant indicates he is unlikely to commit another offense).

"[T]he failure to present mitigating evidence or argue for mitigating factors" can be ineffective assistance of counsel where "mitigation evidence was withheld from the sentencing court." Hess, 207 N.J. at 154. Here, however, "[t]he record before us contains no indication of any similar withholding from the trial court of information that could bear on the court's sentencing analysis." State v. Friedman, 209 N.J. 102, 121 (2012). Defendant fails to identify rational mitigating evidence that trial counsel or appellate counsel should have advanced.

Trial counsel argued mitigating factors five, six and eleven weighed in defendant's favor but the trial judge found only mitigating factor eleven. We previously concluded the trial judge addressed "all" applicable factors and found no basis to interfere with the "[trial] judge's reasoned and appropriate exercise of discretion." State v. Ellis, slip. op. at 18.

Addressing mitigating factors eight and nine, the PCR judge found the factors "inapplicable" because the defendant was previously convicted of an aggravated assault similar in nature to the current crime. Therefore, he ruled

15

there was no factual basis to argue the two mitigating factors. We agree with the PCR judge's determination because defendant's past criminal record completely undermines his argument. Defendant fails to identify rational mitigating evidence that trial counsel or appellate counsel should have advanced. Friedman, 209 N.J. at 121.

C

Defendant further argues the PCR judge abused his discretion by denying an evidentiary hearing, asserting the existence of genuine issues of material fact. PCR courts are not required to conduct evidentiary hearings unless the defendant establishes a prima facie case and "there are material issues of disputed fact that cannot be resolved by reference to the existing record." R. 3:22-10(b). "To establish such a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." State v. Marshall, 148 N.J. 89, 158 (1997) (alteration in original). Speculative assertions are insufficient to establish a prima facie case of ineffective assistance of counsel. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

The record amply supports the PCR judge's findings and conclusions. Defendant has not shown "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694. He was unable to demonstrate the required prejudice. Having failed to establish a prima facie case, defendant was not entitled to an evidentiary hearing. Preciose, 129 N.J. at 462. Accordingly, the PCR court did not abuse its discretion in denying an evidentiary hearing.

To the extent we have not addressed any arguments raise by plaintiff, we have deemed such arguments lacking in sufficient merit to warrant comment in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION