# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0143-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

J.L.G.,

      Defendant-Appellant.

_____

Submitted May 10, 2021 – Decided July 23, 2021

Before Judges Messano and Hoffman.

On appeal from the Superior Court of Jersey, Law Division, Hudson County, Indictment No. 12-11-1994.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant J.L.G. appeals from the July 25, 2019 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

We set forth the following relevant facts in our opinion affirming defendant's conviction:

> Defendant began dating Jennifer[1] in 1996, when Bonnie [Jennifer's daughter] was three months old. Shortly thereafter, defendant moved in with Jennifer and assumed the role of Bonnie's father. Defendant and Jennifer had a son together, James, in 2002, and the four lived together as a family in Jersey City.
>
> Defendant began engaging in sexual activity with Bonnie when she was fourteen. For the next eighteen months, defendant engaged in a pattern of increasingly aggressive sexual behavior with Bonnie. He made Bonnie record him masturbating, performed oral and digital sex on her, and engaged in vaginal intercourse with her at least four times.
>
> Bonnie testified she never wanted to engage in sexual activity with defendant. Defendant would bribe her, giving her substantial sums of money after every encounter. Additionally, Bonnie testified defendant would threaten her with physical violence, pointing a gun at her and threatening to hurt her, her mother, and [her brother] if she ever told anyone about the assaults.

---

[1] We use pseudonyms to protect the minor victim's identity, pursuant to Rule 1:38-3(c)(9).

A-0143-19

Bonnie recorded [audio of] one of the last assaults on her phone.

. . . .

Bonnie finally informed her mother about the sexual assaults in late June 2012, about ten days after defendant last had sex with her. Jennifer called the police, and an investigation ensued. Defendant fled the scene before police arrived. After interviewing Bonnie, the Special Victims Unit (SVU) conducted a "consensual intercept," where they monitored and recorded two phone calls from Bonnie to defendant. During these calls, Bonnie tried to elicit a confession and apology from defendant. Although defendant never admitted [to] assaulting her, he apologized several times for "making [her] miserable." Importantly, he offered to give her money, presumably in exchange for lying to the police and dropping any charges against him. The police eventually found defendant at a friend's house and arrested him.

[State v. J.L.G., No. A-3725-14 (App. Div. Dec. 12, 2016) (slip op. at 2-4), aff'd, 234 N.J. 265 (2018).]

On November 21, 2012, a Hudson County Grand Jury returned Indictment No. 12-11-1994, charging defendant with: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a (count one); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3a (count two); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a (count three); abuse of a child cruelty/neglect, N.J.S.A. 9:6-3 (count four); fourth-degree contempt, N.J.S.A. 2C:29-9 (counts five and seven); third-degree stalking, in violation of N.J.S.A. 2C:12-10b (count

3

six); fourth-degree stalking, N.J.S.A. 12-l0b (count eight); and third-degree witness tampering, N.J.S.A. 2C:28-5a (count nine). The trial court granted defendant's motion to sever counts five, six, seven, and eight, and the State dismissed count four on a separate motion.

A jury trial began on counts one, two, three, and nine on December 3, 2014. The State presented testimony from Bonnie, Jennifer, Jennifer's friend, and police officers. The State also presented the audio recordings and DNA evidence from saliva found on the crotch area of a pair of Bonnie's shorts; DNA testing revealed a small amount of male DNA, of which defendant could not be confirmed or excluded as the source.

Over defense objection, the State called psychologist Lynn Taska to testify as an expert in Child Sexual Abuse Accommodation Syndrome (CSAAS). She explained the term CSAAS was coined by Dr. Roland Summit in 1983 and explained the five characteristics Dr. Summit found to be frequently associated with sexually abused children: secrecy, helplessness, entrapment or accommodation, delayed or disorganized disclosure, and recantation.

Defendant did not testify at trial. Defendant's trial counsel presented testimony from defendant's friend, who testified he regularly visited defendant's home but never saw evidence of the alleged abuse. Counsel also emphasized

A-0143-19

the absence of physical evidence to support Bonnie's allegations, including the inconclusive DNA evidence. Further, counsel challenged Bonnie's credibility, emphasizing inconsistencies in her testimony, her delayed reporting, and a possible ulterior motive to cooperate with the State due to pending criminal charges against her.

At the conclusion of trial, the jury found defendant guilty on all counts. On March 13, 2015, the trial court sentenced defendant to an aggregate term of twenty-three years of imprisonment in state prison, subject to the No Early Release Act (NERA), N.J.S.A. § 2C:43-7.2. The trial court also imposed penalties and assessments, including Sex Crime Victim Treatment Fund (SCVTF) penalties totaling $3,000, N.J.S.A. 2C:14-10.

Defendant appealed and we affirmed his conviction and sentence on December 12, 2016, except for the SCVTF penalties, which we vacated and remanded for correction. J.L.G., slip op. at 19. The trial court accordingly amended the judgment of conviction on December 15, 2016.

Defendant filed a petition for certification, which our Supreme Court granted, limited to the question of whether the trial court properly denied defendant's motion to exclude the testimony of the State's expert regarding CSAAS, on the grounds that CSAAS testimony was irrelevant to defendant's

trial, that its admission was unduly prejudicial to defendant, and that CSAAS testimony was not sufficiently reliable to meet the standard of N.J.R.E. 702. State v. J.L.G., 229 N.J. 606, 607 (2018). The Court remanded the case to the trial court for a hearing, pursuant to N.J.R.E. 104, to determine whether CSAAS evidence meets the reliability standard of N.J.R.E. 702 in light of recent scientific evidence. Id. Following a four-day hearing, the trial court "concluded that CSAAS evidence did not meet the standard for admissibility under N.J.R.E. 702." J.L.G., 234 N.J. at 279.

Following this remand, the Court held it was error to admit testimony about CSAAS, but concluded "the evidence was harmless in light of the overwhelming evidence of defendant's guilt." Id. at 308. The Court therefore upheld our affirmation of defendant's convictions and sentence on July 31, 2018. Ibid.

On October 1, 2018, defendant filed for PCR and submitted a supporting certification. Defendant asserted his trial counsel provided ineffective assistance because she failed to: 1) interview and call James to testify about never seeing evidence of abuse; 2) request that the jury make unanimous findings of guilt for each alleged criminal act; and 3) properly explain to the jury that the DNA evidence found in Bonnie's shorts did not identify defendant.

6

After hearing oral argument on July 25, 2019, the PCR court denied defendant's petition on the record without an evidentiary hearing, finding: 1) defendant failed to provide a certification from James and the absence of his testimony did not prejudice defendant; 2) trial counsel sufficiently explained the DNA evidence; and 3) the Appellate Division already decided a specific unanimity charge for each alleged act was unnecessary. This appeal followed.

On appeal, defendant raises the following arguments:

> POINT I
>
> THE PCR COURT ERRED IN DENYING [DEFENDANT] AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM TRIAL COUNSEL REGARDING HER FAILURE TO INTERVIEW AND CALL [DEFENDANT]'S SON AS A WITNESS AT TRIAL.
>
> POINT II
>
> THE PCR COURT ERRED IN DENYING [DEFENDANT] AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM TRIAL COUNSEL REGARDING HER FAILURE TO OBJECT TO THE TRIAL COURT'S FAILURE TO PROVIDE A SPECIFIC UNANIMITY CHARGE TO THE JURY FOR EACH ALLEGED ACT OF SEXUAL ABUSE.
>
> POINT III
>
> THE PCR COURT ERRED IN DENYING [DEFENDANT] AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM TRIAL COUNSEL

7

REGARDING HER FAILURE TO EMPHASIZE TO THE JURY THAT THE DNA EVIDENCE FOUND IN THE VICTIM'S SHORTS DID NOT IMPLICATE [DEFENDANT].

## II.

When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, that he is entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013); State v. Preciose, 129 N.J. 451, 459 (1992). To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing and he "must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, courts should grant evidentiary hearings and decide on the merits only if the defendant presented a prima facie claim, material issues of disputed facts lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). We review a decision to deny PCR without an evidentiary hearing for abuse of discretion. Preciose, 129 N.J. at 462.

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obliged to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. Strickland v. Washington, 466 U.S. 668, 689 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Further, because prejudice is not presumed, the defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

A.

We first address defendant's contention that trial counsel's failure to interview and call James to testify amounts to ineffective assistance. Defendant maintains James could have testified that he did not see any evidence of abuse, despite being in the next room during alleged instances of abuse, and casted reasonable doubt on Bonnie's allegations.

When a defendant claims that trial counsel inadequately investigated his case, "he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of

A-0143-19

the affiant or the person making the certification." Cummings, 321 N.J. Super. at 170. In addition, deciding which witnesses to call to the stand is "an art," and we must be "highly deferential" to such choices. State v. Arthur, 184 N.J. 307, 321 (2005) (quoting Strickland, 466 U.S. at 689).

Here, defendant provided no such affidavit or certification from James. Also, the fact that James did not see any evidence of abuse is not exculpatory. Thus, this claim is supported by nothing more than bald assertions and lacks merit.

B.

We next address defendant's contention that trial counsel's failure to request a specific unanimity charge amounts to ineffective assistance. In our prior opinion, we addressed whether the trial court's failure to give a specific unanimity charge was plain error. J.L.G., slip op. at 11-12. We found the "general jury instruction . . . did not prejudice defendant" because

> nothing on cross-examination contradicted Bonnie's claims with regard to one form of penetration over another. [A] reasonable jury could not have found her testimony credible with regard to one form of penetration but not with regard to another, so the record shows no tangible indication of jury confusion.
>
> [Ibid. (internal citations and quotation omitted).]

Therefore, even if counsel's failure to request a specific unanimity charge was deficient performance, defendant was not prejudiced by this failure. <u>See</u> <u>Strickland</u>, 466 U.S. at 157 ("defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

C.

We finally address defendant's contention that trial counsel failed to properly explain the State's DNA evidence on summation, amounting to ineffective assistance. Specifically, defendant asserts counsel "should have focused on explaining in detail the DNA results and how he was not a match for what was found in Bonnie's shorts and that someone else was more likely the contributor."

Having carefully reviewed trial counsel's summation, however, we agree with the PCR court's finding that counsel extensively discussed the DNA evidence. Counsel explained how the State offered no DNA evidence, or other physical evidence, conclusively proving the charges against defendant. She addressed how, although defendant could not be excluded as the source of the DNA evidence, neither could a large portion of the male population. When concluding, she encouraged the jury to disregard the DNA evidence entirely.

11

From our careful review, we conclude that counsel's summation "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

We discern no abuse of discretion in the PCR court's consideration of the issues, or denial of defendant's petition without an evidentiary hearing. We are satisfied that trial counsel's performance was not deficient, and defendant provided nothing more than bald assertions to the contrary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION