**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0323-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ROSENDO S. GOMEZ-SERPAS,
 a/k/a SALOMON GOMEZ,
ROSENDO S. GOMEZ-SERPAS,
SALOMON GOMEZSERPAS,
SALOMON GOMEZ-SEEPAS,
SALOMON G. SERPAS,
SALOMON SERPAS, and
SALOMON G. SEEPAS,

     Defendant-Appellant.

_____

Submitted April 10, 2024 – Decided April 24, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-08-0548.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Rosendo Gomez-Serpas appeals from an August 1, 2022 order and written opinion issued by Judge John M. Deitch denying defendant's petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant was convicted at trial for murder and related weapons offenses. He claims his trial attorney rendered ineffective assistance by failing to file a notice of self-defense. After carefully reviewing the record in light of the governing legal principles, we affirm.

I.

We need only briefly summarize the pertinent facts, which are recounted in detail in our direct-appeal opinion, State v. Gomez-Serpas, No. A-4250-17 (App. Div. Feb. 26, 2020). In the early morning hours of April 9, 2016, defendant went to a bar in Elizabeth to pick up his girlfriend, Dinora Rodriguez from work. At some point Rodriguez told Mario Ortiz[1] a patron at the bar, that she would leave with him, even though she did not intend to do so. Rodriguez

---

[1] Ortiz is the victim in this case.

explained she did this to induce Ortiz to stay and buy drinks because she was paid for each drink a patron purchased.

At the end of Rodriguez's shift, she left the bar to meet defendant, who was picking her up. Surveillance footage shows defendant waiting for Rodriguez in the vestibule. She exited the bar through the vestibule area with Gloria Rivera, her co-worker. Rivera testified Ortiz was "grabbing [Rodriguez] from her jacket because he wanted to take her with him to his house . . . [s]o at that point she was telling him that she didn't want to go with him because her boyfriend had come to pick her up and she was going to go with him."

Defendant confronted Ortiz and told him he was taking Rodriguez home. An altercation ensued. This initial confrontation was not captured on video. Rodriguez testified Ortiz "went after [defendant] to hit him with a belt." Defendant testified in his own defense that Ortiz took his belt off and "wrapped it around his hand and threw it at [defendant] and whipped it." Defendant testified that after Ortiz hit him with the belt, defendant went to his car to retrieve a knife.

Outside surveillance video shows defendant enter the parking lot and walk toward the driver's side door of his car, look behind, then walk toward the passenger side of the car. Ortiz followed defendant toward defendant's car.

3

Defendant approached Ortiz—with a knife in hand—and the two began pushing each other. Other persons in the parking lot positioned themselves between defendant and Ortiz to separate them. Defendant maneuvered around a person standing between the antagonists and lunged at Ortiz with the knife. Ortiz then hit defendant with a belt and the two went back and forth. Defendant stabbed Ortiz. Ortiz fell to the ground, got up momentarily, and fell again, this time lying motionless.

Ortiz was pronounced dead. Defendant was arrested at his home approximately ten hours later.

In August 2016, defendant was charged by indictment with first-degree murder, contrary to N.J.S.A. 2C:11-3(a)(1) and/or (a)(2) (count one); second-degree kidnapping, contrary to N.J.S.A. 2C:13-1(b)(1) (count two); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three); and possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(d) (count four). The State dismissed count two prior to trial.

In January and February 2018, Judge Deitch presided over a jury trial, after which defendant was found guilty on all counts. At the sentencing hearing, Judge Deitch merged the possession of a weapon for an unlawful purpose count into the conviction for murder. He imposed a fifty-two-year prison term subject

to the No Early Release Act, N.J.S.A. 2C:43-7.2. Judge Deitch also imposed an eighteen-month prison term on the unlawful possession of a weapon count, to run concurrent with the sentence imposed on the murder conviction.

In February 2020, we affirmed defendant's conviction and sentence. In October 2020, the New Jersey Supreme Court denied defendant's petition for certification. State v. Gomez-Serpas, 244 N.J. 300 (2020).

On October 4, 2021, defendant filed a pro se petition for PCR. On April 18, 2022, counsel filed a supplemental petition.

On July 26, 2022, Judge Deitch convened a PCR hearing. On August 1, 2022, he issued a twenty-two-page written opinion, denying defendant's PCR without an evidentiary hearing. This appeal follows. Defendant raises the following sole contention for our consideration:

> DEFENDANT PRESENTED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BECAUSE COUNSEL FAILED TO FILE A NOTICE OF SELF-DEFENSE, DEPRIVING . . . DEFENDANT OF A JURY INSTRUCTION THAT WOULD HAVE COMPLETELY EXONERATED HIM FROM CRIMINAL LIABILITY, AND DEFENDANT WAS THEREFORE ENTITLED TO AN EVIDENTIARY HEARING.

A-0323-22

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. PCR serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, that he is entitled to the requested relief. Ibid. To sustain this burden, the petitioner must allege and articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

In addressing an ineffective assistance of counsel claim, New Jersey courts follow the two-part test articulated by the United States Supreme Court in Strickland v. Washington. 466 U.S. 668, 687 (1984). See State v. Fritz, 105 N.J. 42, 58 (1987). "First, the defendant must show that counsel's performance was deficient." State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Strickland, 466 U.S. at 687). "Second, the defendant must have been prejudiced by counsel's deficient performance." Ibid. (quoting Strickland, 466 U.S. at 687).

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466

A-0323-22

U.S. at 687. Reviewing courts indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." Id. at 689. "A court evaluating a claim of ineffective assistance of counsel must avoid second-guessing defense counsel's tactical decisions and viewing those decisions under the 'distorting effects of hindsight.'" State v. Marshall, 148 N.J. 89, 157 (1997) (quoting Strickland, 466 U.S. at 689).

The second Strickland prong is especially demanding. It requires the defendant show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694. This "is an exacting standard." Gideon, 244 N.J. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). "Prejudice is not to be presumed," but must be affirmatively proven by the defendant. Ibid. (citing Fritz, 105 N.J. at 52, and Strickland, 466 U.S. at 693).

Short of obtaining immediate relief, a defendant may show that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462-63. However, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's

analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." Marshall, 148 N.J. at 158, 690 (1997) (citations omitted). A PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

Furthermore, the mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The PCR court should grant an evidentiary hearing only when "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." Vanness, 474 N.J. Super. at 623 (citing State v. Porter, 216 N.J. 343, 354 (2013)).

With respect to the first of these three requirements, "[a] prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Porter, 216 N.J. at 355 (quoting R. 3:22-10(b)). "[V]ague, conclusory, or speculative" allegations are

insufficient to warrant an evidentiary hearing.  Ibid. (quoting Marshall, 148 N.J. at 158).

III.

Defendant contends his trial counsel rendered constitutionally deficient assistance because he failed to file a notice of self-defense, depriving the jury of an instruction that would have exonerated him.  Defendant argues "[c]ompetent counsel would have immediately recognized that the video footage clearly showed Ortiz was the aggressor and the defendant armed himself in self-defense."  Judge Deitch carefully reviewed the video and reached a contrary conclusion.  We too have reviewed the video and agree completely with Judge Deitch's findings.

Under Rule 3:12-1:

> A defendant shall serve written notice on the prosecutor if the defendant intends to rely on any of the following sections of the Code of Criminal Justice: . . . [including] General Principles of Justification, [N.J.S.A.] 2C:3-1 to 2C:3-11. . . .
>
> No later than seven days before the Initial Case Disposition Conference that is scheduled pursuant to R. 3:9-1(e) the defendant shall serve on the prosecutor a notice of intention to claim any of the defenses listed herein; and if the defendant requests or has received discovery pursuant to R[ule] 3:13-3(b)(1), the defendant shall, pursuant to R[ule] 3:13-3(b)(2), furnish the prosecutor with discovery pertaining to such

9

defenses at the time the notice is served. The prosecutor shall, within 14 days after receipt of such discovery, comply with R[ule] 3:13-3(b)(1) and (f) with respect to any defense for which the prosecutor has received notice.

In defendant's brief before the PCR court, he cited to the following exchange that occurred during trial counsel's opening statement:

[Defense counsel]: [I]n real life a homicide can lack some of the elements that rise to the level of a murder. It can be an aggravated manslaughter or a manslaughter or even self-defense. I ask you to pay careful—

The COURT: Sidebar.

The COURT: [Defense counsel], I didn't see a [Rule] 3:12 notice on self-defense. My understanding is self-defense is not in the case.

[Defense counsel]: I think we discussed this from the beginning that it was.

[Prosecutor]: Passion/provocation and you're talking he might have a gun and defending against a gun.

The COURT: The only discussion I was party to was in chambers and it was a fair warning to the State that the defendant might argue for passion/provocation.[2] There was no reference to self-defense. Self-defense is a complete defense and requires a notice. There's been no notice, formal or informal.

---

[2] As Judge Deitch noted in his opinion, the defense trial strategy was to argue for the downgraded offense of passion-provocation manslaughter, not self-defense.

Defendant's PCR brief does not mention the judge's ruling immediately following the above-quoted exchange:

> The COURT: Okay. I'm going to strike the reference to self-defense at this point. That's without prejudice to the defense making an application for that defense if the facts bear it out. But at this point there's nothing in the case that would even warrant my consideration of an application to open up that defense.

It is well-settled under New Jersey law "[a] trial judge must sua sponte charge self-defense in the absence of a request . . . 'if there exists evidence in either the State's or the defendant's case sufficient to provide a "rational basis" for its applicability.'" State v. Galicia, 210 N.J. 364, 390 (2012) (quoting State v. O'Carroll, 385 N.J. Super. 211, 236 (App. Div. 2006)). Here, Judge Deitch stated in his PCR opinion, "[t]he [trial] court's ruling is significant in connection with the issue of prejudice caused by the failure to file the notice. In the first instance, the defense was not precluded from presenting evidence to support self-defense. Indeed, [defendant] testified as to his version of events."

Judge Deitch concluded the facts did not support a self-defense charge, reasoning:

> PCR counsel relies heavily upon the testimony of Ms. Rivera who told the jury that she initially told the police that Mr. Ortiz was waiving his belt at the [defendant] prior to [defendant] getting the knife. However, her testimony was belied by the clear video evidence in the

11

case. The video shows Mr. Ortiz putting on his jacket when walking to the parking lot, not taking off his belt. [Defendant's] testimony to the effect that he was being attacked by Mr. Ortiz and another man who were both using their belts to whip him while in the parking lot is also completely controverted by the video evidence. The video evidence shows that Mr. Ortiz did not take off his belt until he was approached by the knife-wielding [defendant].

We agree there was no rational basis upon which to charge the jury on self-defense. N.J.S.A. 2C:3-4 provides "[t]he use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." The statute further provides:

> The use of deadly force is not justifiable under this section unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm; nor is it justifiable if:
>
> (a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter; or
>
> (b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take. . . .

A-0323-22

[N.J.S.A. 2C:3-4(b)(2).]

Judge Deitch carefully reviewed the video evidence and concluded there was an insufficient basis to charge the jury on self-defense. We reproduce verbatim Judge Deitch's precise account of the video surveillance recording:

> 5:40[3] – [Defendant] enters the parking lot alone and heads straight for his car. Mr. Ortiz is over forty feet away from him.
>
> 5:51 – Mr. Ortiz follows the [defendant] to his car. [Defendant] is on the passenger side retrieving his knife.
>
> 5:54 – [Defendant] closes the passenger door and charges Mr. Ortiz, pushing him backwards.
>
> 6:06 – [Defendant] and Mr. Ortiz begin to push each other back and forth while bystanders attempt to separate the two of them.
>
> 6:23 – [Defendant] and Mr. Ortiz are still yelling at each other and gesticulating with bystanders keeping them apart. Each time the [defendant] approaches Mr. Ortiz, Mr. Ortiz backs away.
>
> 6:43 – While separated by a distance of approximately fifteen feet, the [defendant] runs around a male attempting to keep the parties separate and charges Mr. Ortiz, lunging at him with the knife. Mr. Ortiz swings his belt at . . . [defendant]. [Defendant] then presses his attack, stabbing Mr. Ortiz in the chest, knocking him to

---

[3] These numbers denote the minutes and seconds elapsed in the video recording, not the time of day.

the ground.  [Defendant] runs away to his car.  Mr. Ortiz
gets up, walks a few paces, then collapses and expires.

Applying these facts to governing legal principles, Judge Deitch concluded "[defendant] was the aggressor.  [Defendant] was the only party armed.  [Defendant] had consistent and ongoing opportunities to retreat in complete safety.  [Defendant] was not entitled to the defense of self-defense."  Judge Deitch added, "[b]ecause of the overwhelming video evidence, [defendant] is unable to demonstrate that he was prejudiced as a result of counsel's failure to file the notice."

We agree with Judge's Deitch's fact-sensitive analysis.  We add that far from retreating—despite ample opportunity to do so safely—defendant essentially charged at the victim after having retrieved a knife from his car.  In these circumstances, defendant cannot establish the first prong of the Strickland/Fritz test because there was nothing ineffective in counsel's strategic election to eschew a meritless self-defense theory in favor of a passion-provocation defense.[4]  Nor can defendant establish the second Strickland/Fritz prong; any such defense would likely have been unavailing given that defendant

---

[4] As Judge Deitch noted in his written PCR opinion, a passion/provocation jury charge was given, but the jury declined to convict on the downgraded manslaughter offense, instead returning a guilty verdict on the first-degree murder charge.

was the aggressor and failed to satisfy the duty to retreat before employing deadly force. In these circumstances, defendant has not established a prima facie case warranting an evidentiary hearing, much less a new trial. See Cummings, 321 N.J. at 170.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION